MARY ANN GAYET, PLAINTIFF-RESPONDENT, v. GEORGE GAYET, DEFENDANT-APPELLANT.

Argued October 25, 1982—Decided February 14, 1983.

*Michael Farhi* argued the cause for appellant (*Michael A. Manna,* attorney).

*Joseph F. Pandolfi* argued the cause for respondent (*Corrigan & Pandolfi,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

We are asked to determine whether cohabitation by a divorced spouse affects that spouse's existing alimony award. We agree

with the Appellate Division that the test for modification of alimony is whether the relationship has reduced the financial needs of the dependent former spouse. We therefore affirm that court's judgment reversing the trial court ruling that reduced and ultimately eliminated alimony in proportion to the amount of time the new parties lived together.

By judgment of divorce entered July 18, 1978, the defendant-husband was ordered to pay the plaintiff-wife $110 per week as alimony and $50 per week as support for their two children. The plaintiff received custody of the children, subject to off-premises visitation by the defendant, and was permitted to remain in the marital home until she remarried or the youngest child attained majority.

In March 1980, the defendant moved to terminate alimony and compel sale of the marital home, alleging that the plaintiff was cohabiting with another "as husband and wife." The parties stipulated that the plaintiff had cohabited four nights a week in the period between December 1, 1979 and March 15, 1980. Following discovery and a plenary hearing, the trial judge found that, in addition to the stipulated period, plaintiff had cohabited after March 15 approximately one night out of four in an interrupted period between April and July 29, 1980, the date of the hearing. He found that, as of the date of the hearing, "they [were] living together."

The trial court reduced the plaintiff's award retroactively by four-sevenths for the first period, by one-fourth for the second period, and terminated all alimony after July 29, 1980. On plaintiff's appeal, the Appellate Division reversed in an unreported opinion. We granted certification. 91 *N.J.* 194 (1982).

Alimony in New Jersey is primarily governed by statute. *N.J.S.A.* 2A:34–23 authorizes courts to award alimony pending any matrimonial action or after a judgment of divorce in an amount that "the circumstances of the parties and the nature of the case shall render fit, reasonable and just...." In awarding alimony, the court must consider, among other factors, "the

actual need and ability to pay of the parties and the duration of the marriage." *Id.*

In *Lepis v. Lepis,* 83 *N.J.* 139 (1980), this Court held that an award of alimony, whether incorporated in a separation agreement or the terms of the divorce judgment, may be modified following a final judgment of divorce whenever changed circumstances substantially modify the economic conditions of the parties. Among the changed circumstances to be considered by trial courts, the Court specifically included "the dependent spouse's cohabitation with another. . . ." *Id.* at 151 (footnote omitted). The Court noted that alimony should decrease when circumstances render the original amount unnecessary to maintain the standard of living reflected in the original decree or agreement. *Id.* at 153. The task here is to determine whether circumstances have rendered a portion of the support received unnecessary.

Two policies of the law intersect in the resolution of this issue. First, the Legislature has directed that alimony shall terminate upon remarriage. *N.J.S.A.* 2A:34–25; *see Sharpe v. Sharpe,* 109 *N.J.Super.* 410 (Ch.Div.1970), mod., 57 *N.J.* 468 (1971). This signals a policy to end alimony when the supported spouse forms a new bond that eliminates the prior dependency as a matter of law. That policy, however, can conflict with another state policy that guarantees individual privacy, autonomy, and the right to develop personal relationships free from governmental sanctions. *See State v. Saunders,* 75 *N.J.* 200 (1977) (all members of the Court agree that there is a limited state interest in regulating an individual's personal decisions relating to privacy, which have merely incidental effects on others). *See also Right to Choose v. Byrne,* 91 *N.J.* 287 (1982). We must then consider how to balance these competing policies in these circumstances.

Prior to the adoption of New Jersey's 1971 Divorce Act, *L.* 1971, *c.* 212, a spouse seeking support had to prove fault on the part of the other and be free from fault lest the defense of recrimination prohibit alimony. *See, e.g., O'Loughlin v.*

*O'Loughlin,* 12 *N.J.* 222, 229–31, *cert.* den., 346 *U.S.* 824, 74 *S.Ct.* 42, 98 *L.Ed.* 350 (1953); *Henderson v. Henderson,* 134 *N.J.Eq.* 363, 370 (E. & A. 1944); 11 *N.J. Practice (Silverman, Marriage, Divorce and Separation)* (4 ed. 1981) § 1075 at 298. No-fault divorce made two significant changes in the law of alimony. First, either spouse may now receive alimony. Second, a court may now grant alimony to a party who is at fault. Neither of these changes affects the purpose of alimony, which is continued maintenance of the prevailing party "at the standard of living they [dependent spouse and children] had become accustomed to prior to the separation." *Khalaf v. Khalaf,* 58 *N.J.* 63, 69 (1971). The 1971 act does not, however, state the effect of post-divorce cohabitation upon an existing alimony award.

Several jurisdictions cut off alimony upon post-divorce cohabitation. Since 1934, New York law has authorized termination of alimony if the dependent spouse is "habitually living with another man and holding herself out as his wife, although not married to such man." *N.Y.Dom.Rel.Law* § 248 (McKinney 1977).[1] In 1974, California enacted a law terminating alimony upon proof that the dependent spouse was "living with a person of the opposite sex and holding himself or herself out as the spouse of the person for a total of 30 days or more...." *Cal.Civ.Code* § 4801.5 (West Supp.1981).[2] Illinois terminates alimony "if the

---

[1]New York's act has a narrowed effect because of the "holding out" provision. Judge Wachtler observed that since cohabiting couples rarely hold themselves out as married, New York's courts are "powerless to relieve the former husband of the obligation of subsidizing his former wife's affairs no matter how unfair this may be under the circumstances," a result that he found "grotesque." *Northrup v. Northrup,* 43 *N.Y.*2d 566, 373 *N.E.*2d 1221, 1225, 402 *N.Y.S.*2d 997, 1001 (N.Y.Ct.App.1978) (Wachtler, J., dissenting).

[2]California amended its statute in 1976 by providing:

Except as otherwise agreed to by the parties in writing, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex. Upon such a finding of changed circumstances, the court may modify the payment of support.... [*Cal.Civ.Code* § 4801.5(a) (West Supp.1981)].

party receiving maintenance, cohabits with another person on a resident, continuing conjugal basis." *Ill.Ann.Stat.* ch. 40, § 510(b) (Smith-Hurd Supp.1981);[3] *see also Ala.Code* § 30–2–55 (Supp.1982); *Ga.Code Ann.* § 30–220(b) (Supp.1982); *Pa.Stat. Ann.* tit. 23, § 507 (Purdon Supp.1981); *P.R.Laws Ann.* tit. 31, § 385 (1967); *Utah Code Ann.* § 30–3–5(3) (Supp.1981).

However, the majority of jurisdictions have adopted an economic needs test to determine whether cohabitation requires modification of an alimony award. *See generally* Annotation, "Divorced Woman's Subsequent Sexual Relations or Misconduct as Warranting, Alone or With Other Circumstances, Modification of Alimony Decree," 98 *A.L.R.*3d 453 (1980). That test "has been clearly defined in *Garlinger v. Garlinger* [137 *N.J.Super.* 56 (App.Div.1975)] and has been used by other courts in determining termination of alimony." Comment, "The Effect of Third Party Cohabitation on Alimony Payments," 15 *Tulsa L.J.* 772, 779 (1980) (footnotes omitted). The principles of *Garlinger* call for modification when (1) the third party contributes to the dependent spouse's support, or (2) the third party resides in the dependent spouse's home without contributing anything toward the household expenses. 137 *N.J.Super.* at 64. In short, this scheme permits modification for changed circumstances resulting from cohabitation only if one cohabitant supports or subsi-

---

In California "cohabitation" means more than sharing living accommodations; it includes an exchange of household services with credit for the economic value of such services. *Compare Lang v. Superior Court,* 53 *Cal.App.*3d 852, 126 *Cal.Rptr.* 122 (Cal.Ct.App.1975) (construing the 1974 statute) *with In re Marriage of Leib,* 80 *Cal.App.*3d 629, 145 *Cal.Rptr.* 763 (Cal.Ct.App.1978) (construing the 1976 statute).

[3]Even where there is cohabitation, Illinois considers economic circumstances in determining whether to terminate alimony. *See In re Marriage of Olson,* 98 *Ill.App.*3d 316, 53 *Ill.Dec.* 751, 424 *N.E.*2d 386, 390 (Ill.Ct.App.1981) ("an important consideration, divorced from the morality of the conduct, is whether the cohabitation has materially affected the recipient spouse's need for support because she either received support from her co-resident or used maintenance monies to support him") (quoting *Bramson v. Bramson,* 83 *Ill.App.*3d 657, 663, 39 *Ill.Dec.* 85, 89, 404 *N.E.*2d 469, 473 (Ill.Ct.App.1980)).

dizes the other under circumstances sufficient to entitle the supporting spouse to relief.

We believe that this test best balances the interests of personal freedom and economic support and comports with the principles of *Lepis v. Lepis, supra,* and *N.J.S.A.* 2A:34–23. "The law must be concerned with the economic realities of contemporary married life, not a model of domestic relations that provided women with security in exchange for economic dependence and discrimination." *Lepis,* 83 *N.J.* at 156. In another context we recently emphasized economic realities rather than status in granting relief to a cohabitant. *Crowe v. DeGioia,* 90 *N.J.* 126 (1982). Even under prior law, fault would not distort the amount of alimony as measured by economic criteria. *Greenberg v. Greenberg,* 126 *N.J.Super.* 96 (App.Div.1973). Our cases have stressed that alimony is a flexible concept including the concepts of rehabilitative alimony, *Lepis v. Lepis, supra,* and restitutional alimony, *Mahoney v. Mahoney,* 91 *N.J.* 488 (1982). The extent of actual economic dependency, not one's conduct as a cohabitant, must determine the duration of support as well as its amount.

We cannot ignore the sense of injustice that will be engendered in the supporting spouse. The problem, though, is not unique to alimony. In the administration of various public assistance programs, courts have struggled to define the circumstances under which states may "assum[e] that nonlegally responsible persons will apply their resources" to aid the recipient. *Van Lare v. Hurley,* 421 *U.S.* 338, 347, 95 *S.Ct.* 1741, 1747, 44 *L.Ed.*2d 208, 215 (1975). However phrased, the test must consider whether the income and resources are actually available. *See Norman v. St. Clair,* 610 *F.*2d 1228 (5th Cir.1980), *cert.* den. *sub nom. Schweiker v. Norman,* 453 *U.S.* 922, 101 *S.Ct.* 3159, 69 *L.Ed.*2d 1005 (1981). This is consistent with our view that economic realities should dictate the result.

Since one of the procedural prerequisites to discovery and a hearing in a modification proceeding under *Lepis* is an initial

showing of changed circumstances, we hold that cohabitation shall constitute such changed circumstances. Although parties might attempt to conceal a new economic dependency by adopting different living arrangements from remarriage, *see* Oldham, "Cohabitation by an Alimony Recipient Revisited," 20 *J.Fam.L.* 615 (1982), we are satisfied that our courts will have little difficulty in determining the true nature of the relationship. The test is not unlike the criterion employed in *State v. Baker,* 81 *N.J.* 99, 108 (1979), where the Court looked to whether a group "bears the 'generic character of a family unit as a relatively permanent household.'" Valuing the services of a homemaker is familiar from the calculation of survivor's benefits. *N.J.S.A.* 2A:31–1 to –6; *Carter v. West Jersey & Seashore R. Co.,* 76 *N.J.L.* 602 (E. & A. 1908). *See generally* Annotation, "Admissibility and Sufficiency of Proof of Value of Housewife's Services, in Wrongful Death Action," 77 *A.L.R.*3d 1175 (1977).

We respect the concerns of commentators that this approach to cohabitation may discourage marriage, at a time when human relationships have grown more and more transient. Oldham, *supra,* at 623–24; Note, "Beyond Marvin: A Proposal for Quasi-Spousal Support," 30 *Stan.L.Rev.* 359 (1978); Case Comment, "Property Rights Upon Termination of Unmarried Cohabitation: *Marvin v. Marvin,*" 90 *Harv.L.Rev.* 1708, 1713–14 (1977). But marriage has proven itself a durable institution. The legal principles attendant to it need not mirror the passing trends or mores of a particular time. It is best to adhere closely to the language of *N.J.S.A.* 2A:34–23, which stresses the concepts of need and ability to pay, and our decisional law, which has shaped alimony awards to reflect the economic needs of the parties.

We do not hold, as the dissent suggests, that a former spouse must support one who is no longer in need as a result of a new living arrangement. We hold only that the test for support remains constant. New proceedings in accordance with our guidelines will determine the issue of need.

The judgment below is affirmed.

SCHREIBER, J., dissenting.

The majority opinion compels the defendant as a former husband to continue to pay the plaintiff, his former wife, alimony of $110 per week despite the fact that she may not be in need of that support since she is living with another man. The trial court found that as of the date of the hearing "they [were] living together." *Ante* at 150. In the absence of a showing that the alimony funds are not being used to support the new mate and that the new mate is not supporting the alimony recipient, I would terminate alimony.

The finding that the former wife is living with another man indicates that circumstances have changed since the amount of alimony had originally been fixed. Under such circumstances, it should be incumbent upon her to come forward with evidence of the extent of her continued need for alimony, if any. She has caused the change in circumstances and is in possession of the pertinent facts relating to her continued need for support. It might not be amiss to create a rebuttable presumption that alimony is no longer justifiable. *See Grossman v. Grossman,* 128 *N.J.Super.* 193 (Ch. Div.1974) (advocating and applying a rebuttable presumption in similar circumstances).

Imposition upon her of the burden of coming forward is harmonious with the legislative intent that she not be entitled to alimony upon remarriage.[1] *N.J.S.A.* 2A:34–25. This is not to say that the plaintiff might not be entitled to a continuation of alimony in the same or a lesser amount. However, her new live-in companion and she are in a much better position to show their financial and economic situation. Placing the burden of going forward on her would not be unduly onerous. This is not visiting any punishment on her for her conduct. She may have sexual relations, *State v. Saunders,* 75 *N.J.* 200, 225 (1977)

---

[1]The majority acknowledges its "respect [for] the concerns of commentators that [the majority's] approach to cohabitation may discourage marriage . . . ." *Ante* at 155.

(Schreiber, J., concurring), or live with whomsoever she desires, but the obligation of support should not be imposed on the former husband if the reason for that obligation does not exist.

The result in this case may well be that the wife is no longer in need of the same support. The trial court made no findings with respect to whether the plaintiff was using the alimony to cover a portion of the expenses incurred by her new companion or whether he was contributing funds for her support. The trial court did conclude, however, that in the period between December 1, 1979 and mid-March 1980, either he "contributed certain sums or did not pay anything and she used the alimony to cover a part of the expenses incurred by [him]." The majority's reversal terminates the matter in favor of the wife without any trial court findings with respect to her continued need.

I would reverse the judgment of the Appellate Division and remand the matter to the trial court to furnish the plaintiff the opportunity to adduce evidence of her continued need.

*For affirmance*—Chief Justice WILENTZ and Justices CLIF-FORD, HANDLER, POLLOCK and O'HERN—5.

*For reversal and remandment*—Justice SCHREIBER—1.