**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3910-17T3

M.M.,

     Plaintiff-Respondent,

v.

J.Y.,

     Defendant-Appellant.

_____

          Argued May 15, 2019 – Decided June 13, 2019

          Before Judges Koblitz, Currier and Mayer.

          On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0536-09.

          Andrew M. Shaw argued the cause for appellant (De Tommaso Law Group LLC, attorneys; Andrew M. Shaw, on the briefs).

          Eric Jason Lane argued the cause for respondent (Lane & Lane, LLC, attorneys; Eric Jason Lane, on the brief).

PER CURIAM

Defendant J.Y.[1] appeals from a May 3, 2018 order denying his motion to suspend or terminate alimony based on the cohabitation of his ex-wife, plaintiff M.M., and her boyfriend, P.H. (Pat). Following a three-day plenary hearing, the family part judge determined Pat lived with plaintiff, but found insufficient evidence of cohabitation in accordance with N.J.S.A. 2A:34-23(n) to warrant suspension or termination of alimony. We affirm.

We summarize the facts relevant to this appeal.[2] Plaintiff and defendant were married in 1996, separated in 2008, and divorced in February 2013 by a Dual Judgment of Divorce (DJOD). They had a child together, J.Y., Jr. (John), born in 2005. Pursuant to the DJOD, defendant was required to pay alimony to plaintiff of $500 per month for five years.[3]

In 2011, plaintiff began a romantic relationship with Pat. Plaintiff and Pat had a child, A.H. (Anne), born around the time of the DJOD. Since 2013,

---

[1] We use initials and pseudonyms in accordance with Rule 1:38-3(f)(6) to protect the parties' privacy.

[2] Defendant's counsel conceded during argument before the panel that the family court judge's fact-findings were accurate and consistent with the plenary hearing testimony. Defendant challenges the court's application of the facts to the law governing cohabitation.

[3] Defendant's alimony obligation concluded in February 2018.

A-3910-17T3

John and Anne have lived with plaintiff. After Anne's birth, Pat spent considerable time at plaintiff's house.

In 2013, defendant heard rumors of plaintiff's pregnancy and that she had a child with Pat. Two years later, defendant hired a private investigator to confirm plaintiff's cohabitation with Pat. As part of his surveillance, the investigator took thousands of pictures of plaintiff's home during July and August 2016.

Following the investigation, defendant filed a motion to suspend or terminate alimony based on plaintiff's cohabitation with Pat. Defendant also sought attorney's fees. The judge found defendant established a prima facie case of changed circumstances based on cohabitation and ordered the exchange of discovery and a plenary hearing.

The family part judge conducted a plenary hearing on the issue of cohabitation. The following is a summary of the key witnesses' testimony during that hearing.

Defendant's private investigator testified regarding his surveillance. The investigator explained Pat drove John to school in the morning, entered and exited the home freely, resided in the home when plaintiff was not present, barbequed in plaintiff's backyard, walked around plaintiff's yard shirtless,

3

performed outside household chores, including leaf blowing, and entertained guests with plaintiff. The investigator further testified that Pat's car was parked overnight at plaintiff's home "almost every night . . . ."

Defendant also retained a cellphone expert, who issued a report detailing the locations where Pat most often used his mobile phone to place calls or send text messages. The expert testified that Pat used his mobile phone at the following locations: twenty-nine percent of his cellphone usage originated from plaintiff's residence; forty-eight percent of his cellphone usage came from his place of employment; and three percent of his cellphone usage was from his parents' house. The remaining twenty percent of Pat's cellphone usage originated from varied locations.

Plaintiff also testified during the plenary hearing. According to plaintiff, she performed all household chores with occasional help from her father. She testified Pat would drive John and Anne to places such as daycare, school, and other activities. Plaintiff told the judge she did not have joint checking or savings accounts with Pat. Nor did she have any joint credit cards with Pat. Plaintiff rented a home from her parents and was solely responsible for the payment of rent.

A-3910-17T3

Following the hearing, the judge rendered an oral decision. The judge found the defendant's experts to be credible. Based on the testimony of defendant's cellphone expert, the judge concluded plaintiff and Pat were living together, "if not on a full-time basis, [then] very, very close to a full-time basis."

The judge also made credibility findings as to the key witnesses. Regarding defendant's testimony, the judge believed "most" of his testimony. However, the judge found defendant was not credible on some issues, specifically when he learned about Anne's birth and the timing of his knowledge regarding where plaintiff and John lived and with whom they lived. The judge was particularly disturbed by defendant's tape recording of his son immediately prior to the hearing. On the recording, defendant is heard asking his son about Anne despite having information about Anne from the private investigator. The judge found defendant "used that tape for one reason and one reason alone, and that was to use [it] in this litigation . . . to get financial benefit for [him]self and I'm troubled by it."

Regarding plaintiff's credibility, the judge determined she was "fairly accurate" in her recollection and her testimony was "generally credible . . . ." However, he did not believe plaintiff's testimony regarding "the exact number of days that [Pat] [was] staying with her . . . ."

A-3910-17T3

Initially, the judge thought plaintiff's refusal to answer simple questions, such as Anne's date of birth, was "bizarre." However, he reconsidered his position because "[w]e have [defendant] spending over $65,000 before trial, maybe $100,000 with a chance . . . of getting back $30,000 . . . from a woman who has been in and out of bankruptcy and owns nothing." The judge also noted "[w]e have cameras in this case that took 290,000 photographs of [plaintiff, Pat], her child with [defendant] and their child together." The intrusiveness of defendant's investigation of plaintiff, including seeking her gynecological records and Anne's medical records, caused the judge to understand plaintiff's refusal to answer questions during the hearing.

Concerning Pat's testimony, while the judge found Pat to be a "difficult" witness and failed to give "straight answers[,]" he noted Pat did not embellish or lie in responding to questions. The judge understood Pat was displeased with being dragged into the litigation because Pat had to "hire a lawyer with money he doesn't have . . . ." The court did not believe Pat's testimony regarding the number of nights he stayed with plaintiff. However, based on his observation of Pat's demeanor on the stand, the judge generally "believed his testimony." He also found Pat "was dependent on his parents for almost all decisions made in his life . . . he has lived with his parents his entire life, works in the business

A-3910-17T3

with his father and his mother . . . his father and mother do all of the financial transactions for him," and he "get[s] $300 a week."

The judge then addressed cohabitation under N.J.S.A. 2A:34-23(n), finding defendant did not establish cohabitation consistent with the statutory factors. The judge found no evidence to suggest plaintiff and Pat co-mingled or intertwined financial obligations or that Pat contributed to plaintiff's living expenses.

Based on the testimony, the judge also found no evidence plaintiff and Pat shared household chores. Nor was there an enforceable promise from Pat to support plaintiff. There was no proof that plaintiff and Pat were viewed as a couple in public because they did not dine out or entertain. Similarly, there was no evidence plaintiff and Pat held themselves out as a couple in family or social circles.

While the judge determined plaintiff and Pat lived together, under the totality of the evidence, he concluded they were not cohabitating in accordance with N.J.S.A. 2A:34-23(n). The judge explained there was insufficient evidence to determine whether the primary purpose for Pat living in plaintiff's home was to spend time with plaintiff or to spend time with Anne. Based on his findings, the judge denied defendant's motion and request for attorney's fees.

A-3910-17T3

On appeal, defendant claims the judge erred in analyzing the cohabitation factors and declining to award attorney's fees. Defendant further argues the law governing cohabitation should be modified because it encourages a former spouse to live with a paramour, rather than remarry, to continue receiving alimony.

Our review of a trial court's decision to suspend or terminate alimony is limited. "Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). A motion to terminate alimony is based on facts specific to each case, and we "must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). We owe substantial deference to the judge's findings of fact because of the family court's special expertise in family matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). "[A] reviewing court should uphold the factual findings undergirding the trial court's decision if they are supported by adequate, substantial and credible evidence on the record." MacKinnon v. MacKinnon, 191 N.J. 240, 53–54 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)).

8

Alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. A motion addressed to termination or suspension of alimony requires a showing of "changed circumstances." Lepis v. Lepis, 83 N.J. 139, 146 (1980). A prima facie showing of cohabitation constitutes sufficient changed circumstances under Lepis. Gayet v. Gayet, 92 N.J. 149, 154–55 (1983).

Cohabitation has been defined as "an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage." Konzelman v. Konzelman, 158 N.J. 185, 202 (1999). Where a supporting spouse seeks to suspend or terminate alimony because of the dependent spouse's cohabitation, the applicable test "is whether the relationship has reduced the financial needs of the dependent former spouse." Gayet, 92 N.J. at 150. Alimony may be suspended or terminated "only if one cohabitant supports or subsidizes the other under circumstances sufficient to entitle the supporting spouse to relief." Id. at 153–54.

In 2014, the Legislature amended the cohabitation statute to provide:

> [a]limony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil

A-3910-17T3

union but does not necessarily maintain a single common household.

When assessing whether cohabitation is occurring, the court shall consider the following:

(1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;

(2) Sharing or joint responsibility for living expenses;

(3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and

(7) All other relevant evidence.

In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship. A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.

[N.J.S.A. 2A:34-23(n).]

10

The supporting spouse bears the burden of proving "cohabitation to the satisfaction of the court . . . ." Konzelman, 158 N.J. at 202. Once the supporting spouse makes such a showing, "a rebuttable presumption of changed circumstances [arises, which] shift[s] the burden to the dependent spouse to show that there is no actual economic benefit to the spouse or the cohabitant." Ozolins v. Ozolins, 308 N.J. Super. 243, 245 (App. Div. 1998).

Here, the judge did not abuse his discretion when he determined plaintiff and Pat did not satisfy the statutory factors to find cohabitation. Nothing in the record suggested Pat helped plaintiff with her household expenses or chores, or that he intertwined finances with her. At best, Pat provided limited financial assistance by purchasing formula, food, clothing, and diapers for Anne. There is nothing in the record to indicate Pat, who earned $300 per week working for his parents, made any financial contribution toward plaintiff's living expenses. Nor was there evidence in the record establishing that the couple's relationship was recognized in their social circles. Most importantly, there was no proof that Pat and plaintiff lived together for any purpose other than to afford Pat an opportunity to spend time with Anne. Based on the substantial deference we owe to the judge's findings, we discern no basis to disturb the denial of defendant's application to suspend or terminate alimony.

Defendant further argues the statute and case law governing cohabitation should be modified because the law encourages an ex-spouse to live with a paramour without formally receiving a marriage license, thus allowing an ex-spouse to continue receipt of alimony from the supporting spouse. Defendant contends that because plaintiff and Pat have a child together and live together, the situation is functionally equivalent to a marriage, requiring the suspension or termination of alimony.

In arguing cohabitation and marriage are functionally the same, defendant relies on Quinn v. Quinn, 225 N.J. 34 (2016). In Quinn, the Supreme Court stated, "[t]he only distinction between remarriage and cohabitation is a license and the recitation of vows in the presence of others." Id. at 53–54. Defendant relies on the quoted language in Quinn to support a finding of cohabitation in this case. Here, the judge found considerable evidence why the relationship between plaintiff and Pat was not similar to a marriage.

Defendant argues it is de facto cohabitation when people live together and have a child together. Cohabitation extends beyond simply living together and having a child together. The statute requires analysis of several factors, including finances, social perception, household chores, and other promises of support. Based on our review of the record, the judge properly analyzed the

A-3910-17T3

cohabitation factors and did not abuse his discretion in determining plaintiff was not cohabiting.

We also reject defendant's argument that the judge erred in denying his request for an award of attorney's fees. Rule 4:42-9 provides for the award of attorney's fees in cases involving a family action pursuant to Rule 5:3-5(c). Rule 5:3-5(c) sets forth the following factors for determining whether to award attorney's fees:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

The purpose of a fee award is to permit parties in unequal financial circumstances to litigate on equal footing and provide the needier party with the financial means to litigate. Winegarden v. Winegarden, 316 N.J. Super. 52, 62 (App. Div. 1998). A decision to award attorney's fees is within the discretion of the judge. Gotlib v. Gotlib, 399 N.J. Super. 295, 314-15 (App. Div. 2008).

Here, the judge properly assessed the factors governing defendant's application for attorney's fees in accordance with Rule 5:3-5(c). The judge concluded plaintiff would suffer financial hardship if she were forced to pay attorney's fees because she is "broke." Further, the judge found John and Anne would suffer if the court awarded fees because plaintiff had limited finances compared to defendant. The court noted defendant paid his legal fees, which were approximately $65,000 before the start of the plenary hearing.

In responding to defendant's bad faith argument, the judge found plaintiff made a "modicum of effort" to comply with defendant's discovery requests even though she was not represented by counsel at the time. Thus, he declined to award attorney's fees based on a finding of bad faith.

Having analyzed the factors for an award of counsel fees, we discern no abuse of discretion in the judge's denial of defendant's motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14                                                                 A-3910-17T3