**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1424-18T1

SAMUEL CHERNIN,

     Plaintiff-Appellant,

v.

BETTE CHERNIN,

     Defendant-Respondent.

_____

Submitted October 8, 2019 - Decided August 14, 2020

Before Judges Accurso and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-26072-90.

Franzblau Dratch, PC, attorneys for appellant (S.M. Franzblau, of counsel and on the briefs; Daniel A. Lebersfeld, on the briefs).

Callagy Law, attorneys for respondent (Brian P. McCann, on the brief).

PER CURIAM

Plaintiff Samuel Chernin appeals from a November 2, 2018 order denying his most recent motion to be relieved of his agreement to pay permanent alimony to his former wife of thirty-four years, defendant Bette Chernin, and to maintain a life insurance policy to secure that obligation. Because we agree with the Family Division judge that plaintiff did not establish changed circumstances entitling him to relief, we affirm.

We are, of course, familiar with the matter as this is the third appeal we have considered in the last four years relating to plaintiff's permanent alimony obligation to defendant. We refer the reader to our prior opinions, the holdings of which we summarize here, for the factual background.

In 2016, we considered whether plaintiff was "entitled to an order terminating his alimony obligation under L. 2014, c. 42, § 1, "the 2014 amendments to the alimony statute, N.J.S.A. 2A:34-23, based on defendant's cohabitation, which plaintiff had already "established over the course of a five-day plenary hearing in 1996." Chernin v. Chernin, No. A-2470-14 (App. Div. Mar. 2, 2016) (Chernin I) (slip op. at 1). Because we had already determined in Spangenberg v. Kolakowski, 442 N.J. Super. 529, 538 (App. Div. 2015), that the Legislature mandated "the 2014 amendments not be construed to modify the duration of alimony ordered or agreed upon, or to modify

specifically bargained for contractual provisions incorporated into an enforceable written agreement between the parties, a judgment of divorce, or a final order concluding post-judgment litigation, all of which applied here," we found the trial court erred in relying on the amendments to modify the permanent alimony previously ordered in this case. Chernin I (slip op. at 6).

We specifically noted in the 2016 appeal that the only basis plaintiff had asserted for terminating his alimony was "defendant's cohabitation," considered under the 2014 amendments to the alimony statute. Id. at 8. Plaintiff's counsel conceded "that plaintiff's age [78] would, at [that] point, provide no basis for changed circumstances under Lepis v. Lepis, 83 N.J. 139 (1980), as plaintiff continue[d] to work and [could] well afford his alimony obligation." Id. at 9. Although finding the 2014 amendments to the alimony statute did not apply, we made clear that plaintiff remained "free to move to modify his alimony obligation upon a showing of changed circumstances." Ibid.

In 2018, we considered plaintiff's appeal from orders denying his motions to terminate his alimony and relieve him of his agreement to maintain a life insurance policy to secure the obligation based on changed circumstances. Chernin v. Chernin, No. A-2303-16 (App. Div. June 5, 2018)

(Chernin II) (slip op. at 1).  Summarizing the application in the trial court, we noted

> [p]laintiff acknowledged his own circumstances had not changed.  Although then seventy-eight years old, he was still working and had no plan to retire.  Instead, he claimed defendant's circumstances had changed.  Despite conceding defendant remained in the same relationship Judge Torack considered on plaintiff's 1996 motion, he argued "[i]n the ensuing nineteen years, their relationship has . . . become the equal of that of a married couple.
>
> [Id. at 4].

As to his insurance obligation, "plaintiff admitted he had let the policy lapse and contended "securing it would be cost prohibitive for [him] at [his] age."  Ibid.

Defendant had argued in the trial court that, "her continued cohabitation with the same man she had been cohabiting with in 1996 did not represent any changed circumstances," and noted plaintiff's concession in the 2016 appeal "'that with the exception of the new statutory amendments, nothing else [had] changed in the intervening twenty years.'"  Id. at 5.  (quoting Chernin I (slip op. at 4)).

Summarizing the trial court's findings, we wrote:

> the judge rejected plaintiff's claim that defendant's relationship "grew from one in which they technically

maintained separate residences," at the time of the hearing before Judge Torack, "to one in which they behave in all respects like a married couple." The judge pointed out Judge Torack found in 1996 that despite their separate residences, defendant and her partner spent six or seven days together almost every week, dined together almost every night, traveled together, comingled their finances, treated one another's homes as their own and maintained an intimate and exclusive relationship indistinguishable from that of a family as described in Gayet.[1] The judge found "nothing had changed" and plaintiff could not relitigate the same cohabitation claim he succeeded on twenty years ago.

[Id. at 5-6]

The trial judge also enforced defendant's insurance obligation, finding plaintiff had "offered no reasonable basis for having allowed the policy to lapse and had not shown why he should be relieved of an obligation voluntarily undertaken at the time of the parties' divorce." Id. at 6. As to plaintiff's claim that the cost of reinstating the policy would be prohibitively expensive, we noted the judge's finding that "plaintiff provided only generalized estimates from an insurance broker about what a policy might cost for someone plaintiff's age but nothing specific as to plaintiff." Ibid. We also noted the judge's finding that "she could not assess plaintiff's claim that such a

---

1 Gayet v. Gayet, 92 N.J. 149 (1983).

policy would be prohibitively expensive without knowing something about plaintiff's finances, which he had not disclosed." Ibid. The judge did, however, observe that "Judge Torack found plaintiff's gross income at the time of the divorce [in 1992] was $364,000 and in 1994 it was $989,000." Ibid.

We affirmed, substantially for the reasons expressed by the trial judge, and reiterated what we said in 2016, that "plaintiff 'remains free to move to modify his alimony obligation upon a showing of changed circumstances' under Lepis, 83 N.J. at 146 (emphasis added)." Id. at 7. We held plaintiff was "not entitled to a review of his permanent alimony obligation based simply on the passage of time," as the law was "well settled that '[a] prima facie showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status.'" Ibid. (quoting Lepis, 83 N.J. at 157).

Shortly after we issued our 2018 opinion, plaintiff again moved to terminate his alimony on the basis of changed circumstances. Plaintiff repeated his claims that in the years since Judge Torack's decision reducing defendant's alimony based on her cohabitation with her partner, the couple's lives and finances had become even more intertwined. Plaintiff asserted he had proof they now "invested together" in that they had taken a mortgage on a home owned by the parties' daughter to secure a $100,000 loan. When

defendant countered that she had loaned the parties' daughter the $100,000 in 2012 to allow her to pay off credit card debt so she could qualify for a mortgage to buy a new home, and that she only added her partner's name to encourage her daughter to pay her back, plaintiff asserted that proved she no longer needed alimony. As to his insurance obligation, plaintiff claimed he could not secure it at any cost in light of his age and health. In support, he provided three unsworn letters declining him coverage.

The judge hearing the motion asked plaintiff's counsel at argument what had changed since 2016. Plaintiff's counsel acknowledged plaintiff's circumstances had not changed as he was still working and still able to pay his alimony, although then eighty-one years old. Plaintiff's counsel also acknowledged that defendant was still living with the same man she'd been living with for the last twenty years.

Although conceding defendant's relationship had not changed, plaintiff's counsel argued "the financial circumstances have changed" and plaintiff had never previously filed a motion with any court "to say that the financial circumstances have changed." Counsel also argued "it was premature to address the life insurance issue until the alimony issue is addressed, because

the life insurance amount may be modified if there's to be a change of alimony."

Defendant countered that plaintiff's motion was only a rehash of his last application, well short of a prima facie case of changed circumstances, and that plaintiff continued to ignore court orders to have life insurance in place and court rules by failing to file a case information statement on a post judgment motion to modify his alimony.

The trial judge agreed. He found the motion simply duplicative of the one plaintiff filed in 2016. The judge noted that plaintiff had slightly changed the theory in arguing that defendant's financial relationship with her partner had changed, but found plaintiff continued to rely on the same facts on which he had previously relied when arguing about their living situation.

As for the $800,000 in life insurance that plaintiff voluntarily agreed in the settlement incorporated into the judgment of divorce to maintain "for so long as his alimony obligation shall continue," the judge found plaintiff had never established it is too expensive to maintain as he had steadfastly refused to provide any information about his own finances. The judge noted that "plaintiff states he has a medical condition, but that's one paragraph in the beginning of his certification, which is about sixteen paragraphs long." The

8

judge found "[a]ll [plaintiff] has submitted on the life insurance issue are three form letters from companies stating, [']sorry, we can't give you this life insurance.[']  He hasn't stated that it's prohibitively expensive to maintain."

The judge accordingly denied plaintiff's motion to modify his alimony and enforced the 2016 order that he reinstate his life insurance policy. Specifically, the judge ordered plaintiff to provide proof of coverage no later than December 3, 2018.  In the interim, the judge ordered plaintiff to immediately post an $800,000 bond for defendant's benefit that could be released upon proof of insurance coverage to plaintiff.  The judge denied plaintiff's request for a stay, and we are advised by the parties that the bond remains in place pending appeal.

On appeal, plaintiff argues two points:

> I.  There are changed circumstances with respect to plaintiff's obligation to procure life insurance on the grounds that plaintiff has shown that he cannot procure life insurance irrespective of cost.

> II.  Plaintiff presented sufficient evidence to demonstrate a prima facie case of changed circumstances that at least required defendant to provide discovery regarding her finances.

We deem plaintiff's second argument as without sufficient merit to warrant discussion in a written opinion.  See R. 2:11-3(e)(1)(E).  We repeat

that plaintiff cannot prevail on a changed circumstance motion based on defendant's cohabitation with the same man plaintiff proved she was cohabiting with twenty-three years ago. Judge Torack reduced plaintiff's alimony obligation following a five-day hearing in 1996, based on his finding that defendant and her partner "shared six or seven days together most of the time" and "enjoyed a permanent, social, personal, intimate and a business relationship" akin to that of a family. See Chernin II (slip op. at 6-7). Plaintiff cannot re-litigate the same issue with the hope of further reducing or eliminating his alimony. Defendant's cohabitation is simply not a change in circumstances here, it is the status quo ante.

We also affirm the denial of plaintiff's motion to modify his obligation to maintain life insurance. In his last motion, plaintiff argued the cost of reinstating the policy he'd let lapse was cost prohibitive. When we affirmed the denial of that motion based on the court's inability to test that thesis because plaintiff refused to disclose his finances, he changed tacks. He next claimed that he could not comply with the order because "no insurance company will underwrite a life insurance policy for plaintiff given his advanced age and various health ailments."

10

But as the trial court concluded, while that may be true, plaintiff did not come close to establishing the proposition on the motion on the basis of one paragraph in a certification self-describing his medical condition and three unsworn letters from insurers denying his application for insurance. Plaintiff argues the court erred in making him bond the obligation, claiming Jacobitti[2] "limit[s] the imposition of self-funded trust in lieu of life insurance to situations where the dependent ex-spouse is completely dependent on alimony and is at risk of becoming a public charge."

We disagree. Plaintiff misapprehends what the trial court found here. The judge found plaintiff's proofs on the motion did not establish he was uninsurable, and plaintiff's failure to disclose his finances made it impossible to determine whether the cost of obtaining insurance was otherwise prohibitive. Thus, the judge found no reason not to enforce the prior orders that plaintiff procure an $800,000 life insurance policy naming defendant as beneficiary as he was directed to do in 2014 and 2016. Because plaintiff had failed to comply with those orders and asserted it was impossible for him to do so, although failing to establish that by admissible evidence, the court ordered

_____

[2] Jacobitti v. Jacobitti, 135 N.J. 571 (1994).

that he bond the amount until he provided proof of the policy, when the bond would be released.

We find no error in the court's approach. Plaintiff voluntarily agreed in the settlement incorporated into the judgment of divorce to "maintain life insurance insuring his life naming [defendant] as beneficiary . . . to the extent of $800,000 for so long as his alimony obligation shall continue." Defendant never released plaintiff from that obligation, and he never went to court to be relieved of it. He simply violated the judgment of divorce and let the policy lapse. He never advised when he did so or why. He simply wants the court to relieve him of his contractual undertaking now that the violation had been discovered without: 1) explaining why and when he violated the order and how long that situation has persisted; 2) what he's done to try to comply, e.g., by having a broker attempt to place the policy; and 3) disclosing his finances to permit a court to determine whether plaintiff has the means to satisfy his contractual undertaking in another manner, i.e. by bonding it or establishing a trust to secure the payment. A Jacobitti trust may well be exactly in order. See Jacobitti, 135 N.J. at 580 (explaining that in the case of an uninsurable supporting spouse a court may "order such a spouse to create a trust to protect the dependent spouse in the event of" the supporting spouse's death, thereby

achieving "the same protection for a dependent spouse as an order requiring an insurable supporting spouse to maintain life insurance for the benefit of the former spouse").

Plaintiff maintains that the purpose of life insurance for a supporting spouse "is to secure future alimony in the event of a supporting spouse's untimely, rather than inevitable, death." That may be so, but there is nothing in the record that we noticed where the parties explained their intent in including the clause in their settlement agreement to be incorporated in the judgment of divorce, which, of course, is more important than how others might use the device. We reiterate that plaintiff may move to modify his alimony obligation, or the requirement that he maintain life insurance to the extent of $800,000 naming defendant as beneficiary so long as that obligation continues, if he can show changed circumstances under Lepis, 83 N.J. at 146.

In sum, we find no error in the trial court's order denying plaintiff's motion to terminate or modify his alimony and compelling him to bond the $800,000 he agreed to provide defendant in life insurance until he provides proof of such policy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1424-18T1