**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4345-17T1

NANCY M. MENNEN,

     Plaintiff-Respondent,

v.

JOHN H. MENNEN,

     Defendant-Appellant.

_____

Argued February 28, 2019 – Decided April 2, 2019

Before Judges Simonelli and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0384-02.

Francis W. Donahue argued the cause for appellant (Donahue, Hagan, Klein & Weisberg, LLC, attorneys; Francis W. Donahue and Stephanie Frangos Hagan, of counsel; Francis W. Donahue and Kaitlyn A. Lapi, on the briefs).

Paul H. Townsend argued the cause for respondent (Townsend, Tomaio & Newmark, LLC, attorneys; Paul H. Townsend, of counsel and on the brief; Kevin W. Ku and Daniel Pelic, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant John H. Mennen appeals from a Family Part order denying his request to compel additional discovery from plaintiff Nancy M. Mennen relating to cohabitation issues that could affect defendant's ongoing obligation to pay alimony, provide life insurance, and pay other expenses. The motion judge denied defendant's motion because he did not make a prima facie showing of cohabitation that would justify expansive discovery and intrusion upon plaintiff's privacy.[1] For the reasons that follow, we affirm.

I.

The parties were divorced in January 2004 after a thirteen-year marriage. Their children are emancipated. As part of their settlement agreement (SA) incorporated into the judgment of divorce, defendant agreed to pay plaintiff $5500 monthly in permanent alimony, plus annual increases based upon the Consumer Price Index percentage. Defendant also: continued to pay plaintiff's reasonable unreimbursed medical and dental expenses; provided her with health insurance; maintained a life insurance policy to secure defendant's alimony

---

[1] Plaintiff filed a notice of cross-motion seeking to deny the motion and for an award of counsel fees that was denied and is not part of this appeal.

A-4345-17T1

obligation; and paid for her lease acquisition fee. The parties agreed in the SA that alimony would be terminated upon the happening of various events. In particular, Article V, Paragraph 2 set forth the cohabitation language:

> Alimony shall cease and terminate at the earliest to occur of the Husband's death, the Wife's death, or the Wife's remarriage. <u>In the event of the Wife's cohabitation in the future with an unrelated person in a relationship tantamount to marriage after the sale of the property referred to in Article IV Paragraph 14 above, the Husband's obligation to pay alimony to the Wife may be revisited in accordance with the principles set forth in Gayet v. Gayet, 92 N.J. 149 (1983) and its progeny.</u>
>
> [(Emphasis added).][2]

According to defendant, plaintiff has maintained a longstanding relationship with her significant other, J.K., in which the two of them allegedly interact and hold themselves out as the equivalent of spouses. In support of his contentions, defendant provided in his motion papers an unsigned and uncertified private investigator's report that stated J.K. was present eighty-eight percent of the time during thirty-two of the investigator's visits spanning a four-

---

[2] Article IV Paragraph 20 of the SA prohibited cohabitation by either party with an unrelated person in a relationship tantamount to marriage until the former marital residence was sold. The marital residence was deemed additional child support and was purchased by defendant where plaintiff could reside with the parties' three daughters.

and-a-half month period. The surveillance was conducted "early morning," "late evening," and during the "middle of the night"; during the week, weekends, and holidays; and on consecutive and alternating days. The investigator noted a pattern of visits, whereby J.K. would leave plaintiff's residence between 6:15 a.m. and 6:30 a.m. The report states that J.K. has a garage door opener to plaintiff's home, and that he does not own or rent property in New Jersey. He uses a post office box at a United Parcel Service in Chester as his address and on his driver's license, and he listed plaintiff's address as his residence on two occasions. Defendant claims that J.K. is "enmeshed" in the everyday life of plaintiff as supported by Facebook pictures, including his attendance at her daughter's[3] wedding. The report stated:

> A search of current trade lines, recent inquiries and current creditors revealed that J.K. has used [the marital residence] on two occasions between 2008 and 2016. Additionally, the subject and J.K. share two credit cards, a Lowe's card, and a Capitol One card.
>
> According to database research, J.K. is associated with the subject's SSN, which may be a result of the credit lines that they share.

---

[3] This daughter was born of another relationship.

No financial independence was shown by plaintiff and no objective evidence was submitted by her to refute the investigator's findings according to defendant.

In opposition to the motion, plaintiff certified that J.K. resides with his brother in Belvidere, a forty-five minute drive from her home; they have been dating since 2009; and they have been photographed together at social events. In thirty-one pages of Facebook photographs, J.K. is only depicted in five of them, spanning a seven-year period, and there are no photographs of plaintiff on his Facebook page. J.K. lost his home in Chester to a short sale in 2015, sold his Andes, New York home, and filed for bankruptcy in January 2014. He has a garage door opener but no keys for plaintiff's residence. Plaintiff certified that J.K. stayed with her while performing contracting work at a Morris Township residence "to save nearly half the drive" to his brother's home in Belvidere. J.K. used plaintiff's vehicle once during the surveillance period. She denied having a cohabitation arrangement with him.

In his bankruptcy petition, J.K. did not list any co-debtors on Schedule F, which requires disclosure of all unsecured creditors having non-priority claims, such as credit card holders. His Lowe's and Capitol One credit cards were listed and did not name plaintiff as a co-debtor, and she was not listed on Schedule H

5

of his bankruptcy petition, which mandates disclosure, not only of co-debtors, but co-signors and guarantors as well. No evidence was provided to support the investigator's conclusion that J.K. listed the marital residence as his address on "official documents."

With respect to an all-terrain vehicle accident involving one of the parties' daughters, A.M.,[4] in July 2009 at J.K.'s formerly owned property in Andes, plaintiff certified that she never had an equitable or legal interest in that property. She and J.K. were named as co-defendants in a personal injury action filed on behalf of A.M., who was a minor at the time of the accident. A settlement obtained in October 2016 in A.M.'s favor without an admission of liability, and was paid by J.K.'s insurance company.

As to the four trash pulls from her residence, plaintiff argues that "none of the pulls yielded any items addressed to or seemingly belonging to J.K.," and that "[t]he majority of the trash collected consisted of diapers, a significant amount of takeout food, credit card statements belonging to the [plaintiff's] daughter and feminine hygiene products." Three receipts uncovered were debit card purchases using plaintiff's Lakeland bank account at a Target store and a Marshalls/HomeGoods store for purchases of "window accents, baby food and

---

[4] We use initials to protect the child's privacy.

other baby goods and cosmetics."  The private investigator's report was "stale," being eight months old by the time the motion was filed according to plaintiff, and the so-called "findings" are "exaggerated" and unsupported by any documentation.

Following oral argument, the Family Part judge denied defendant's motion to compel discovery and suspend alimony payments.  The judge concluded that defendant failed to meet his burden to show a prima facie case of cohabitation, including any proof of cohabitation.  Defendant and his investigator "were leaping to some conclusions without proof," and the findings were "limited" and "overreaching," in the judge's view.  No certifications from the parties' adult children were submitted in support of the motion, as the judge noted.  The surveillance events took place in the "late evening and/or early morning hours," and J.K.'s vehicle was only observed on thirty-two out of thirty-eight occasions, which was considered by the judge, and a significant number of overnights "for the very limited period" specified in the report.

Notably, only thirty-eight surveillance events took place during evening hours.  "It simply wasn't enough" for a prima facie showing of cohabitation even though the judge found J.K. stayed over plaintiff's home periodically.  The judge stated:

So I don't find that the [defendant] leapt over the bar necessary to get discovery. I am in all of these cohabitation [matters] mindful that it's hard to prove cohabitation from the outside. It's very difficult. And I do think that's the reason that I look at whatever the proffered evidence by the [defendant] is in a light favorable to him or her. But I just find here that hasn't been met given the very limited findings, including the observations of J.K. at the [plaintiff's] residence for a short period of time.

Defendant wanted his version of the facts "to be true" according to the judge, "but wanting facts to be true does not make them facts." "Trash pulls" from her residence yielded nothing relative to cohabitation, only credit card statements and store receipts pertaining to the parties' daughters. The judge also found defendant submitted "proof [that] was to the contrary" of prima facie cohabitation. The judge also found the SA predated the alimony reform statute that was passed in September 2014[5] but the "statutory listing of the factors and description of cohabitation really didn't change the law on the substance of it . . . . the statute really changes the remedy." This appeal followed.

## II.

Defendant argues in Point I of his brief that evidence of plaintiff and J.K. having a long-term relationship and residing together is prima facie evidence of

---

[5] N.J.S.A. 2A:34-23.

changed circumstances, and that there is substantial credible evidence to justify discovery. We disagree.

We first consider the well-settled principles that guide our review. Alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. To make such a modification, a showing of "changed circumstances" is required. Lepis v. Lepis, 83 N.J. 139, 146 (1980); see Weishaus v. Weishaus, 180 N.J. 131, 140 (2004). To determine whether there is a prima facie showing of changed circumstances, the court must consider the terms of the order at issue and compare the facts as they existed when the order was entered with the facts at the time of the motion. See Faucett v. Vasquez, 411 N.J. Super. 108, 129 (App. Div. 2009).

A prima facie showing of cohabitation constitutes sufficient changed circumstances under Lepis. Gayet v. Gayet, 92 N.J. 149, 154-55 (1983). Cohabitation has been defined as "an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage." Konzelman v. Konzelman, 158 N.J. 185, 202 (1999). Where a supporting spouse seeks to decrease or terminate alimony because of the dependent spouse's cohabitation, "the test for modification of alimony is whether the relationship has reduced the financial needs of the dependent former

spouse." <u>Gayet</u>, 92 N.J. at 150. Alimony may be modified "when (1) the third party contributes to the dependent spouse's support, or (2) the third party resides in the dependent spouse's home without contributing anything toward the household expenses." <u>Id.</u> at 153 (citing <u>Garlinger v. Garlinger</u>, 137 N.J. Super. 56, 64 (App. Div. 1975)).

"[A] showing of cohabitation creates a rebuttable presumption of changed circumstances shifting the burden to the dependent spouse to show that there is no actual economic benefit to the spouse or cohabitant." <u>Reese v. Weis</u>, 430 N.J. Super. 552, 570 (App. Div. 2013) (quoting <u>Ozolins v. Ozolins</u>, 308 N.J. Super. 243, 245 (App. Div. 1998)). The court must focus on the cohabitant's economic relationship to discern "whether one . . . 'subsidizes the other.'" <u>Id.</u> at 571 (quoting <u>Boardman v. Boardman</u>, 314 N.J. Super. 340, 347 (App. Div. 1998)). Whether this economic benefit exists requires a fact-intensive inquiry by the trial judge. <u>Id.</u> at 576.

Our scope of review of the trial court's decision is limited. "Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." <u>Larbig v. Larbig</u>, 384 N.J. Super. 17, 21 (App. Div. 2006). Each individual motion for modification is particularized to the facts of that case, and "the appellate court

10

must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). We will not disturb the trial court's decision on alimony unless we

> conclude that the trial court clearly abused its discretion, failed to consider all of the controlling legal principles, or must otherwise be well satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole.
>
> [Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).]

Prior to the Legislature's adoption of the 2014 amendments, the legal criteria for cohabitation were not specified by statute but instead embodied in case law. See, e.g., Konzelman, 158 N.J. at 195-203. Defendant relies on Konzelman arguing that he only needs to show plaintiff and her paramour are living together and he provides economic support.

As the Supreme Court explained in Konzelman, cohabitation is typified by the existence of a marriage-like relationship "shown to have stability, permanency[,] and mutual interdependence." Id. at 202; see also Reese, 430 N.J. Super. at 570 (second alteration in original) (similarly noting that "[c]ohabitation involves an 'intimate[,]' 'close and enduring' relationship,

11

requiring 'more than a common residence' or mere sexual liaison") (quoting Konzelman, 158 N.J. at 202). Although "living together, intertwined finances such as joint bank accounts, shared living expenses and household chores, and recognition of the relationship in the couple's social and family circle" may support a finding of cohabitation, such illustrative examples must not be considered in a vacuum. Konzelman, 158 N.J. at 202. "A mere romantic, casual[,] or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony[,]" nor is simply sharing "a common residence, although that is an important factor." Ibid. "Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage." Ibid.

If a prima facie showing of cohabitation is made, the disputing ex-spouses may then engage in mutual discovery. Gayet, 92 N.J. at 154-55. The payor's prima facie showing of cohabitation creates a rebuttable presumption of changed circumstances, which the dependent ex-spouse may then attempt to rebut "with proof that the need for [spousal] support remains the same." Ozolins, 308 N.J. Super. at 248 (App. Div. 1988); see also Reese, 430 N.J. Super. at 581 (reaffirming this court's holding in Ozolins).

In 2014, the Legislature addressed cohabitation in subsection (n) of N.J.S.A. 2A:34-23. That provision sets forth the following considerations that bear upon cohabitation issues:

> n. Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.
>
> When assessing whether cohabitation is occurring, the court shall consider the following:
>
> (1)   Intertwined finances such as joint bank accounts and other joint holdings or liabilities;
>
> (2)   Sharing or joint responsibility for living expenses;
>
> (3)   Recognition of the relationship in the couple's social and family circle;
>
> (4)   Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;
>
> (5)   Sharing household chores;
>
> (6)   Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and
>
> (7)   All other relevant evidence.

In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship. A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.

In denying the motions, the judge also noted:

I don't find anything unreasonable in the concerns that [defendant] has given the long-term relationship. And while he did not as I say get over the bar of proving a prima facie case, I don't find that filing this motion was unreasonable. I think he may have confused as I said motive. You know J.K. did have serious financial difficulties. And it would be logical for someone to assume that he was relying on support from the [plaintiff]. But again there's just an absence of proof of that.

We are mindful that the materials submitted to the motion judge – including the Facebook posting of J.K. – reflect that he and plaintiff take part with one another in a variety of social and family activities, and attended her daughter's wedding, family gatherings, and other such events together. Even so, the present record lacks any evidence that the couple's finances are intertwined or that plaintiff is financially dependent upon her significant other. Here, we agree with the judge that defendant failed to establish a prima facie case of cohabitation, and we find no abuse of discretion.

A-4345-17T1

III.

In Point II of his brief, defendant argues that he presented substantial, credible evidence of a prima facie case of cohabitation to justify discovery. We disagree.

There is no proof of joint bank accounts or other joint asset holdings; no proof that the couple share living expenses; and no proof of any enforceable promise of support. There is no proof of shared household chores. Regardless of whether the criteria expressed in prior case law or codified in subsection (n) are applied, the record amassed by the defendant was reasonably deemed insufficient by the motion judge to rise to the level of a prima facie case that would justify the additional discovery he sought.

We reject defendant's argument that if the motion judge had considered the investigator's report, the balance would have tipped in favor of a prima facie showing of cohabitation. The critical factor is "the extent of actual economic dependency[.]" Rose v. Csapo, 359 N.J. Super. 53, 59 (Ch. Div. 2002) (quoting Gayet, 92 N.J. at 154). The economic benefit to either cohabitator must be sufficiently material to justify relief. Gayet, 92 N.J. at 153-54. Even if all of the materials proffered by defendant are considered, we remain convinced of the soundness of the motion judge's finding that defendant has not presented a prima

15

facie case. While we acknowledge that economic interdependence is difficult to prove, defendant presented no proof whatsoever to support his claim of cohabitation. Therefore, the motion judge did not abuse his discretion in declining defendant's demand for discovery.

Notwithstanding our disposition, nothing in this opinion forecloses defendant from filing a future motion to establish a prima facie case with appropriate proofs on the issue of cohabitation as defined in the parties' SA. Pending such a future motion, defendant's alimony and other obligations shall continue as agreed upon in the parties' SA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4345-17T1