**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3279-18T3

CAROLYN SMITH-BARRETT,

    Plaintiff-Appellant,

v.

MICHAEL SNYDER,

    Defendant-Respondent.

_____

> Argued January 15, 2020 – Decided  February 5, 2020
>
> Before Judges Koblitz, Whipple and Mawla.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0329-06.
>
> Diana N. Fredericks argued the cause for appellant (Gebhardt & Kiefer, PC, attorneys; Diana N. Fredericks, on the briefs).
>
> Franklin G. Whittlesey argued the cause for respondent (Scholl & Whittlesey, LLC, attorneys; Franklin G. Whittlesey, on the brief).

PER CURIAM

Plaintiff Carolyn Smith-Barrett appeals from the March 19, 2019 order denying her application to terminate her alimony to her former husband, defendant Michael Snyder, based on his cohabitation. We agree that plaintiff presented insufficient evidence of cohabitation to require further discovery at that time and affirm.

## I. Factual background.

The parties were married on August 31, 1986 and have two emancipated children. A final judgment of divorce with a Property Settlement Agreement (Agreement) was entered on November 13, 2007.

Based upon defendant's lack of income, the Agreement provided that plaintiff would pay defendant alimony of thirty percent of plaintiff's gross annual base salary, with the applicable salary capped at $230,000 annually. Defendant's current alimony award was $2280 biweekly based on plaintiff's current salary of $197,600. The Agreement also required plaintiff to pay additional alimony of twenty percent of her total gross annual bonus, with the additional alimony capped at $15,000 per annum.

Three provisions in the Agreement are relevant to plaintiff's appeal of the denial of her motion to terminate alimony. Paragraph 9 states:

> [Plaintiff's] obligation to pay alimony to [defendant] shall terminate upon the earliest occurrence of any one

or more of the following events: . . . (3) remarriage of [defendant]; or (4) cohabitation of [defendant] with an unrelated female. Termination based upon one of the foregoing events shall be effective on the date of the event or occurrence. [Defendant] shall have an affirmative obligation to advise [plaintiff] of his remarriage or cohabitation within seven (7) days of the event.

Paragraph 55 provides that "[i]n the event of any dispute arising out of this Agreement or the performance thereof, [defendant] and [plaintiff] agree that all attempts should be made between them to settle the dispute by [a]greement before using the courts for any determination." Paragraph 56 states that "[s]hould either [defendant] or [plaintiff] fail to abide by the terms of this Agreement, the defaulting party will indemnify the other for all other reasonable expenses and costs, including attorneys fees incurred in successfully enforcing this Agreement."

On June 25, 2018, plaintiff hired a private investigator to determine whether defendant was cohabiting with K.R.[1] After receiving a report from the investigator detailing instances where K.R.'s vehicle was found parked at defendant's home, as well as collecting Facebook posts showing that defendant and K.R. were romantically involved, plaintiff's attorney sent two letters to

---

[1] We refer to K.R. by her initials to protect her privacy.

defendant informing him she was seeking to terminate her alimony obligation based on evidence of cohabitation. Although defendant's attorney responded by calling plaintiff's attorney, defendant did not reply in writing.

In a written decision, the court denied both plaintiff's motion to terminate alimony and her counsel fee request. The court rejected plaintiff's assertion that defendant was cohabiting with K.R., finding plaintiff only provided evidence that defendant was in a romantic relationship with K.R. Citing to Konzelman v. Konzelman, 158 N.J. 185, 202 (1999), the court stated that "[c]ohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage." Social media postings of defendant and K.R. celebrating holidays and taking vacations together "fail[ed] to show that the couple ha[d] undertaken duties and privileges that are commonly associated with marriage." The court found that "plaintiff fail[ed] to provide any other evidence showing cohabitation, such as, the couple living together, intertwined finances, sharing living expenses and household chores."

Plaintiff provided the court with a certification from her private investigator detailing the number of times K.R.'s car was parked outside defendant's home, which the court found to be "insufficient to present even a question of fact concerning cohabitation." The court concluded that defendant

4

and K.R. "appear[ed] to maintain separate homes, no evidence of intertwined finances [was] adduced, nor [was] there any evidence of the couple holding themselves out in a relationship tantamount to marriage." It characterized the relationship as a "committed dating relationship" with overnights at each other's residences at times, which did not "rise to the level of cohabitation."

The court focused its analysis of the fee issue on plaintiff's argument that defendant violated the terms of the Agreement. The court acknowledged that plaintiff attempted to resolve the issues before filing a motion, but ultimately concluded that because plaintiff failed to provide evidence of cohabitation, "no genuine issue to mediate" existed, and plaintiff was therefore not owed counsel fees.

## II. Standard of Review.

A trial judge has "broad discretion" in reviewing an application to modify alimony. Storey v. Storey, 373 N.J. Super. 464, 470 (App. Div. 2004) (citing N.J.S.A. 2A:34-23). The decision of a family court to modify alimony is reviewed under an abuse of discretion standard. Larbig v. Larbig, 384 N.J. Super. 17, 23 (App. Div. 2006). "Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within the Family

Part judge's sound discretion." Id. at 21 (citing Innes v. Innes, 117 N.J. 496, 504 (1990)).

Cohabitation by a dependent ex-spouse constitutes a changed circumstance that could justify a modification of the supporting ex-spouse's alimony obligation. Gayet v. Gayet, 92 N.J. 149, 154–55 (1983). In Landau v. Landau, 461 N.J. Super. 107 (App. Div. 2019), we recently held that "the changed circumstances standard of Lepis v. Lepis, 83 N.J. 139, 157 (1980), continues to apply to a motion to suspend or terminate alimony based on cohabitation following the 2014 amendments to the alimony statute, N.J.S.A. 2A:34-23(n)." Landau, 461 N.J. Super. at 108. Those amendments defined cohabitation as "involv[ing] a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household." N.J.S.A. 2A:34-23(n). Under the statute, "[a] court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis." Ibid.

Instead, courts "shall consider" the following factors "[w]hen assessing whether cohabitation is occurring[:]"

> (1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;

(2) Sharing or joint responsibility for living expenses;

(3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person . . . ; and

(7) All other relevant evidence.

[Ibid.]

After carefully reviewing the amendments, "we [saw] no indication the Legislature evinced any intention to alter the Lepis changed circumstances paradigm when it defined cohabitation and enumerated the factors a court is to consider in determining 'whether cohabitation is occurring' . . . ." Landau, 461 N.J. Super. at 116 (quoting N.J.S.A. 2A:34-23(n)). We determined the party seeking modification still bears the burden of establishing "[a] prima facie showing of changed circumstances . . . before a court will order discovery of an ex-spouse's financial status." Id. at 118 (alteration in original) (quoting Lepis, 83 N.J. at 157).

7

In Gayet, our Supreme Court held that cohabitation of the dependent former spouse constitutes a change of circumstances justifying the reduction or termination of alimony only if the economic benefit inuring to either cohabitor is "sufficiently material to justify relief." Konzelman, 158 N.J. at 196 (citing Gayet, 92 N.J. at 154–55). "Under this economic needs test, the reduction in alimony is granted in proportion to the contribution of the cohabitor to the dependent spouse's needs." Ibid. (citing Gayet, 92 N.J. at 154–55).

An agreement to terminate alimony based upon a dependent spouse's cohabitation is "enforceable so long as the relationship constitutes cohabitation and 'the cohabitation provision of the [PSA] was voluntary, knowing and consensual.'" Ibid. (citing Konzelman, 158 N.J. at 203).

In determining whether a dependent ex-spouse's relationship rises to the level of cohabitation, our Supreme Court stated:

> Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.
>
> [Konzelman, 158 N.J. at 202.]

A-3279-18T3

Cohabitation requires "stability, permanency and mutual interdependence." Ibid. The court must determine whether the relationship "bears the 'generic character of a family unit as a relatively permanent household.'" Gayet, 92 N.J. at 155 (citing State v. Baker, 81 N.J. 99, 108 (1979)). "A mere romantic, casual or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony." Konzelman, 158 N.J. at 202.

A party seeking modification of an alimony agreement based on cohabitation must first establish a prima facie case of cohabitation before a court orders discovery and a plenary hearing. Lepis, 83 N.J. at 157, 159. "[A] party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary." Id. at 159 (citing Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)). "In determining whether a material fact is in dispute, a court should rely on the supporting documents and affidavits of the parties. Conclusory allegations would, of course, be disregarded." Ibid.

### III. Cohabitation.

Plaintiff argues that the trial court failed to address the "substantial and authenticated proofs provided in support of [her] motion." She maintains that "even if there were a dispute as to the financial issues between [defendant and

9

K.R.], that is a basis under which discovery must have been ordered." She argues that because the parties have been divorced for thirteen years, she is entitled to discovery and a plenary hearing to access the financial information needed to prove her allegations that defendant is cohabiting with K.R.

In support of her argument that defendant is cohabiting with K.R., plaintiff offers evidence in the form of social media postings on Facebook indicating that defendant and K.R. spent holidays, social events, and vacations together. Plaintiff argues that the two of them spending time together in an intimate relationship "reflects stability and permanency," and "bear[s] the general character of a family unit."

She offers the following social media posts: defendant traveled to Aruba in November 2015; defendant updated his Facebook cover photo to a picture of himself and K.R. on November 20, 2016; both K.R. and defendant changed their Facebook statuses to "in a relationship" on November 22, 2016; K.R. changed her profile picture to the two of them in November and December 2016 wishing followers a "Happy Thanksgiving" and "Merry Christmas"; defendant shared a picture of the two of them in front of a Christmas tree on November 30, 2016; defendant updated his cover photo to a picture of K.R. on May 9, 2017; defendant updated his profile picture to a picture of the two of them on May 30,

A-3279-18T3

September 17, October 12 and October 14, 2017; defendant changed his profile picture to one of the two of them in front of a Christmas tree on December 26, 2017; defendant changed his profile picture to a new picture of the two of them on July 4 and July 31, 2018; defendant posted a beach picture of himself with K.R. on October 22, 2018, and left comments indicating that the two were in Aruba together; and defendant updated his profile once more on November 19, 2018, with a photograph of the two of them.

Plaintiff also hired a private investigator to investigate defendant and K.R. beginning on June 25, 2018. His report indicated that he "conducted activity checks between July 12 and July 28, 2018, and suspended further activity checks at the homes due to unusually low or lack [of] activity" at both defendant's and K.R.'s homes. The report indicated that K.R.'s car was parked outside of defendant's home on the following dates: September 9, 2018; September 10, 2018; October 28 to October 31, 2018; November 1 to November 3, 2018; November 5 to November 12, 2018; and November 17, 2018. The report did not indicate that the investigator saw defendant or K.R. enter or exit each other's home and did not provide evidence of any daily activities conducted together.

Defendant provided a certification and case information statement detailing his financial circumstances. In defendant's certification, he stated that

A-3279-18T3

his "friendship" with K.R. "has not risen to the level of a marriage-like relationship" and they have "no plans for marriage in the immediate future." In response to the social media postings offered by plaintiff, defendant stated that "[w]hile we have taken [two] vacations together and shared some holidays over the past [two] years, there has been no cohabitation." Defendant responded to the private investigator's report by explaining that K.R.'s car was parked at his house on occasions when he borrowed her car because his was inoperable. Defendant also certified that: he and K.R. maintain separate households; they have not been seeing each other for more than two years; they do not share any property, bank accounts or expenses; they each paid for their own expenses when they went on vacation together; they do not share in any joint living expenses or responsibilities; they do not have any children together; and "neither of [them] ha[ve] pledged to support the other." As the family court judge found, the social media postings only show that defendant and K.R. are involved in an intimate, dating relationship, not that they are cohabiting.

Plaintiff's investigator reported seeing K.R.'s car parked outside of defendant's home on less than twenty days between July and November 2018. Unlike the investigator in Konzelman, plaintiff's investigator did not observe activities such as defendant or K.R. exiting each other's homes in the morning,

A-3279-18T3

entering the homes through a garage door or by key access, or engaging in any household chores, such as yardwork or taking out the garbage. See Konzelman, 158 N.J. at 191–92. The trial court properly concluded that plaintiff's evidence from the private investigator was "insufficient to present even a question of fact concerning cohabitation."

Plaintiff must first establish a prima facie case of cohabitation before a court will order discovery and a plenary hearing. Lepis, 83 N.J. at 157. In order to establish a prima facie case of cohabitation, plaintiff must provide evidence that her dependent ex-spouse and an unrelated female have "undertaken duties and privileges that are commonly associated with marriage," including "living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle." Konzelman, 158 N.J. at 202. Plaintiff relies primarily on Facebook posts indicating that defendant and K.R. are in a dating relationship. This is not enough to establish a prima facie case of cohabitation. See Landau, 461 N.J. Super. at 118.

Our Supreme Court recently stated:

> We do not today suggest that a romantic relationship between an alimony recipient and another, characterized by regular meetings, participation in mutually appreciated activities, and some overnight

stays in the home of one or the other, rises to the level of cohabation. We agree that this level of control over a former spouse would be unwarranted.

[Quinn v. Quinn, 225 N.J. 34, 54 (2016).]

### IV. Counsel fees.

In denying her request for attorney fees, plaintiff argues that the "trial court failed to make any specific findings of fact and conclusions of law" with respect to the factors set forth under Rule 5:3-5(c) to determine the amount of counsel fees. Those factors, however, are for the purpose of determining the amount of counsel fees owed after a judge finds that the award of counsel fees is appropriate.

Plaintiff's claim for counsel fees is based on defendant's failure to disclose his cohabitation and lack of response to plaintiff's attempt to settle the issues out of court as required by the Agreement. The trial court reviewed this claim and properly concluded that because plaintiff had inadequate proof of cohabitation, "there was no genuine issue to mediate." Since defendant did not violate the Agreement, the denial of plaintiff's request for an award of counsel fees and costs was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3279-18T3