SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**Cardali v. Cardali** (A-25-22) (087340)

**Argued April 25, 2023 -- Decided August 8, 2023**

**PATTERSON, J., writing for a unanimous Court.**

The Court considers the prima facie showing of cohabitation that a party seeking to suspend or terminate alimony must present in order to obtain discovery.

Plaintiff Suzanne Cardali and defendant Michael Cardali entered into a property settlement agreement (PSA), which was incorporated in their judgment of divorce in December 2006. The PSA provided that defendant's obligation to pay plaintiff alimony would end upon her "cohabitation," as defined by New Jersey law.

In December 2020, defendant filed a motion to terminate alimony, stating he believed that plaintiff and an individual named Bruce McDermott had been in "a relationship tantamount to marriage" for more than 8 years, over the course of which they attended family functions and other social events as a couple, memorialized their relationship on social media, and vacationed together. Defendant submitted the report of a private investigator indicating that plaintiff and McDermott were together on all of the 44 days that they were under surveillance, and that they were together overnight on more than half of those days. The investigator's report included photographs of plaintiff and McDermott carrying groceries, bags of personal belongings, and laundry in and out of one another's residences. The investigator stated plaintiff had access to McDermott's home when McDermott was not at home.

The trial court denied defendant's application, and the Appellate Division affirmed. The Court granted certification limited to questions about the prima facie showing and discovery issues. 252 N.J. 465 (2023).

**HELD:** A movant need not present evidence on all of the cohabitation factors set forth in Konzelman v. Konzelman, 158 N.J. 185, 202 (1999) -- or in N.J.S.A. 2A:34-23(n), for cases in which the PSA was executed after the statute's enactment -- to make a prima facie showing. If the movant's certification addresses some of the relevant factors and is supported by competent evidence, and if that evidence would warrant a finding of cohabitation if unrebutted, the trial court should find that the movant has presented prima facie evidence of cohabitation and should grant limited

1

discovery tailored to the issues contested in the motion, subject to any protective order necessary to safeguard confidential information. Here, defendant presented prima facie evidence as to several of the Konzelman cohabitation factors, and that evidence, if unrebutted, would warrant a finding of cohabitation. Defendant was therefore entitled to limited discovery.

1. Agreements to terminate alimony upon the cohabitation of the recipient spouse are enforceable so long as the relationship constitutes cohabitation and the cohabitation provision of the PSA was voluntary, knowing, and consensual. In Konzelman, the Court observed that "[c]ohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage," including, but "not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle." 158 N.J. at 202. In 2014, the Legislature amended the alimony statute, which now prescribes a standard for trial courts to apply when they determine whether the record supports a finding of cohabitation, including factors similar to those identified in Konzelman. See N.J.S.A. 2A:34-23(n). The financial relationship between the spouse or civil union partner receiving alimony and the alleged cohabitant is not itself dispositive; it is instead addressed in three of the seven statutory factors to be considered by the trial court. (pp. 13-19)

2. The Court has not yet addressed the prima facie showing necessary for a court to order discovery in a dispute over cohabitation, but the Appellate Division recently rejected the argument that, in a case governed by the 2014 amendments to the alimony statute, evidence of all specific factors prescribed by N.J.S.A. 2A:34-23(n) "must be presented for a movant to establish a prima facie case of cohabitation." Temple v. Temple, 468 N.J. Super. 364, 370 (App. Div. 2021). The Appellate Division held that, for a prima facie showing, "[i]t is enough that the movant present evidence from which a trier of fact could conclude the supported spouse and another are in 'a mutually supportive, intimate personal relationship' in which they have 'undertaken duties and privileges that are commonly associated with marriage or civil union.'" Id. at 371 (quoting N.J.S.A. 2A:34-23(n)). (pp. 20-22)

3. In this case, because the parties' PSA was executed before N.J.S.A. 2A:34-23(n) was enacted, the appeal is governed by the definition of "cohabitation" and the factors identified in Konzelman, 158 N.J. at 202, not by N.J.S.A. 2A:34-23(n). The two standards are closely analogous, however, and the Court addresses the requirements for a prima facie showing in both categories of cases. A prima facie showing is distinct from the final proofs that are the basis for an adjudication on the merits; it is simply a threshold showing required so that the privacy of the spouse or civil union partner receiving alimony is not invaded in pursuit of a baseless cohabitation claim. Nothing in Konzelman or N.J.S.A. 2A:34-23(n) suggests that

2

the movant must present evidence relevant to all of the factors in order to set forth a prima facie case. Indeed, any such requirement would impose an unfair burden on a movant at the preliminary stage. Absent discovery, a movant is unlikely to have access to documents relevant to the financial factors. The Court holds that if the movant presents a certification supported by competent evidence as to at least some of the relevant factors, and if that evidence, if unrebutted, would sustain the movant's burden of proof as to cohabitation, the court should find that the movant has made a prima facie showing even if the spouse or civil union partner receiving alimony presents a certification contesting facts asserted by the movant. (pp. 23-28)

4. If the trial court finds that the movant has presented a prima facie showing of cohabitation, it should order limited discovery as to discrete issues relevant to one or more of the cohabitation factors that govern the case. In fashioning its discovery order, the trial court should take appropriate steps to safeguard the privacy of the spouse or civil union partner receiving alimony and the individual with whom that person is alleged to be cohabiting. New Jersey's current Family Part court rules do not address post-judgment discovery in connection with a motion to terminate or suspend alimony based on cohabitation, and the Court requests that the Family Practice Committee propose amendments to the court rules governing such discovery and uniform interrogatories to streamline the discovery process in such cases. Following the completion of limited discovery, the parties should file supplemental certifications. If material facts remain in dispute after that, the court must conduct a plenary hearing to determine the motion. The movant bears the burden of proving cohabitation at all stages of the proceeding. (pp. 28-30)

5. Here, although defendant did not proffer evidence that plaintiff and McDermott had "intertwined finances such as joint bank accounts" or that they were "sharing living expenses," he did present evidence about other Konzelman factors, including evidence relevant to whether plaintiff and McDermott were "living together," evidence that they shared household chores, and evidence relevant to "recognition of the relationship in the couple's social and family circle." The Court does not address whether that evidence -- in its current form or as potentially buttressed by financial information following discovery -- establishes cohabitation under the Konzelman standard. But assuming, for purposes of the prima facie inquiry, that defendant's contentions are correct, the evidence he presented constitutes a prima facie showing of cohabitation, and the trial court did not properly exercise its discretion when it denied defendant's motion without discovery. (pp. 30-32)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUSTICE PATTERSON's opinion. JUDGE SABATINO (temporarily assigned) did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-25 September Term 2022

087340

Suzanne Cardali,

Plaintiff-Respondent,

v.

Michael Cardali,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 25, 2023 | August 8, 2023 |

Matheu D. Nunn argued the cause for appellant (Einhorn, Barbarito, Frost & Botwinick, and DeTommaso Law Group, attorneys; Matheu D. Nunn, of counsel and on the briefs, and Jessie M. Mills, Bonnie C. Frost, and Taryn R. Zimmerman, on the briefs).

Thomas D. Baldwin argued the cause for respondent (Chiesa, Shahinian & Giantomasi, attorneys; Thomas D. Baldwin, on the brief).

Jeralyn L. Lawrence, President, argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; Jeralyn L. Lawrence, of counsel and on the brief, and Derek M. Freed, Timothy F. McGoughran, Catherine Murphy, and Brian G. Paul, on the brief).

1

Carolyn N. Daly argued the cause for amicus curiae New Jersey Chapter of American Academy of Matrimonial Lawyers (Cohen Seglias Pallas Greenhall & Furman, attorneys; Carolyn N. Daly, Jeralyn Lawrence, Dina M. Mikulka, and Sheryl J. Seiden, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In actions for divorce, "courts may award alimony 'as the circumstances of the parties and the nature of the case shall render fit, reasonable and just.'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Innes v. Innes, 117 N.J. 496, 503 (1990)); see also N.J.S.A. 2A:34-23 (prescribing the factors for a court to apply in determining alimony). An award of alimony, however, is "always subject to review and modification on a showing of 'changed circumstances.'" Lepis v. Lepis, 83 N.J. 139, 146 (1980); see also Quinn, 225 N.J. at 48-49.

We have long recognized, as one example of "changed circumstances," the decision of a spouse or civil union partner receiving alimony to cohabit with another person, and we have authorized courts to suspend or terminate alimony in certain settings on cohabitation grounds. Quinn, 225 N.J. at 49-55; Konzelman v. Konzelman, 158 N.J. 185, 197-203 (1999); Gayet v. Gayet, 92 N.J. 149, 150-55 (1983). In Konzelman, we defined cohabitation as "an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage," and we identified factors that a

2

court should apply to determine whether to find cohabitation in a given case. 158 N.J. at 202.

In 2014, the Legislature amended the alimony statute to codify the standard governing motions to suspend or terminate alimony based on cohabitation, applying the amendments prospectively. L. 2014, c. 42, § 1. It defined cohabitation to "involve[] a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household," and prescribed seven factors, most of which are analogous to the factors identified in Konzelman, to guide the court's determination. N.J.S.A. 2A:34-23(n).

In this appeal, we consider the prima facie showing of cohabitation that a party seeking to suspend or terminate alimony must present to obtain discovery. Plaintiff Suzanne Cardali and defendant Michael Cardali entered into a property settlement agreement (PSA), incorporated in their Dual Judgment of Divorce. The PSA provided that defendant's obligation to pay alimony to plaintiff would terminate upon her "cohabitation," as defined by New Jersey law. Because the parties' PSA was executed before the enactment of N.J.S.A. 2A:34-23(n), the definition of "cohabitation" in Konzelman and the factors identified in that decision apply.

3

Defendant filed a motion to terminate his alimony obligation, claiming that plaintiff was in a long-term romantic relationship with an individual named Bruce McDermott and that the relationship constituted "cohabitation" as that term was defined in our decisions in Konzelman and Quinn. Defendant presented evidence relevant to some of the cohabitation factors identified in Konzelman but submitted no evidence of any financial relationship between plaintiff and McDermott. He argued that he needed discovery in order to provide such proofs.

The trial court found that defendant had failed to present evidence that plaintiff and McDermott supported one another financially or in other respects, or that the relationship between plaintiff and McDermott was analogous to marriage. It held that defendant had not presented a prima facie showing of cohabitation and denied his motion without prejudice to a future application to terminate alimony. The Appellate Division affirmed the trial court's determination.

We granted in part defendant's petition for certification, and now reverse the Appellate Division's judgment. We do not view the case law, or N.J.S.A. 2A:34-23(n) in cases governed by the statute, to require evidence of a financial relationship between the spouse or civil union partner receiving alimony and the other person as a prerequisite to discovery; as a practical matter, such a

4

showing may be impossible without discovery. Accordingly, we hold that a movant need not present evidence on all of the cohabitation factors in order to make a prima facie showing. If the movant's certification addresses some of the relevant factors and is supported by competent evidence, and if that evidence would warrant a finding of cohabitation if unrebutted, the trial court should find that the movant has presented prima facie evidence of cohabitation.

If the movant presents such prima facie evidence, the court should grant limited discovery tailored to the issues contested in the motion, subject to any protective order necessary to safeguard confidential information. If material facts remain in dispute after discovery and the filing of supplemental certifications, the court must conduct a plenary hearing before deciding the motion to terminate or suspend alimony.

In this appeal, we find that defendant presented prima facie evidence as to several of the Konzelman cohabitation factors, and we view that evidence, if unrebutted, to warrant a finding of cohabitation. Defendant was therefore entitled to limited discovery, and the trial court erred when it denied his motion to terminate alimony without ordering discovery. Accordingly, we reverse the Appellate Division's judgment and remand this matter to the trial court for further proceedings.

I.

A.

Plaintiff and defendant were married on June 18, 1988. They had two children, a son born in 1992 and a daughter born in 1995.

After initiating divorce proceedings, the parties, represented by counsel, negotiated the terms of a PSA. The parties executed the PSA on October 17, 2006, and it was incorporated in their Dual Judgment of Divorce entered on December 4, 2006. The PSA provided that defendant would pay permanent alimony to plaintiff in the amount of $5,417 per month. It stated that defendant's "obligation to pay alimony shall terminate upon [plaintiff's] remarriage or cohabitation (as defined by NJ law) or [plaintiff's] or [defendant's] death, whichever occurs first."

On December 1, 2020, defendant filed a motion to terminate alimony and for other relief that is not relevant to this appeal. In a certification filed in support of his motion, defendant stated that he believed that plaintiff and McDermott had been in "a relationship tantamount to marriage" for more than eight years, interrupted by a brief separation in 2014. He certified that he had learned in the summer of 2013 that McDermott "had proposed marriage to [plaintiff] and she declined." Relying on photographs and social media posts, defendant contended that plaintiff and McDermott had attended family

6

functions and other social events as a couple, memorialized their relationship on social media, and vacationed together.

Defendant also submitted the report of a private investigator whom he retained to conduct surveillance of plaintiff and McDermott. The investigator reported that plaintiff and McDermott were together on all of the forty-four days that they were under surveillance in May through September 2019 and in October 2020, and that they were together overnight on more than half of those days. The investigator's report included photographs of plaintiff and McDermott carrying groceries, bags of personal belongings, and laundry in and out of one another's residences. The investigator stated that plaintiff had access to McDermott's home when McDermott was not at home.

Plaintiff opposed defendant's motion to terminate alimony. She certified that "McDermott, with whom I have had an off and on dating relationship over the years, has never proposed marriage to me, nor I to him," and that she had "no interest in another relationship akin to or actually like marriage." She represented that she and McDermott maintained separate residences, primarily lived apart, and did not "share economics, either by way of contributing toward the other's expenses, sharing joint bank or financial accounts, loaning the other money, or supporting the other in any way." Plaintiff stated that although she and McDermott "certainly enjoy spending time with and are fond

7

of each other," they were not "in a mutually supportive, intimate personal relationship" in which they undertook "duties and privileges commonly associated with marriage."

Although the parties' PSA preceded the enactment of N.J.S.A. 2A:34-23(n), the trial court based its determination on the statute. The court opined that it is unclear precisely what evidence is necessary for a prima facie showing of cohabitation under N.J.S.A. 2A:34-23(n). It reasoned that "[s]erious committed dating relationships" are "vastly different than those of thirty or forty years ago," and that the relationship must be considered "under current social norms." The court cautioned that "the supported spouse is not to be financially punished for dating or even trying to find a future spouse" and held that "[t]he financial relief stemming from a finding of cohabitation is that the supported spouse no longer needs the financial support of the supporting spouse because that support is being provided, in whole or in part, by another person."

The trial court viewed the record to establish that plaintiff and McDermott saw one another frequently, that their relationship was recognized by their respective social circles, that they might occasionally have independent access to one another's homes, that they vacationed together, and that McDermott had a close relationship with the parties' children. The trial

8

court found these factors to constitute "hallmarks" that McDermott was "plaintiff's long-term romantic partner." The court ruled, however, that "the evidence provided does not suggest that their relationship is marriage-like or that they mutually support each other financially or otherwise." The trial court therefore denied defendant's application, without prejudice to his opportunity to renew his application at a later stage "if the facts change."

## B.

Defendant appealed the trial court's order. He agreed with the trial court that N.J.S.A. 2A:34-23(n) governed his application to terminate alimony. Defendant contended, however, that at a preliminary stage in which his only obligation was to present a prima facie showing, the trial court had improperly imposed on him a burden to proffer evidence on all cohabitation factors set forth in N.J.S.A. 2A:34-23(n) without the benefit of discovery and had thereby deprived him of the opportunity to prove his claim.

Plaintiff disputed defendant's contention that N.J.S.A. 2A:34-23(n) governs this case. She argued that our law provides no precise definition of a prima facie showing of cohabitation, and that the trial court had properly exercised its discretion when it denied defendant's motion.

The Appellate Division acknowledged that N.J.S.A. 2A:34-23(n) applies only prospectively. The court stated, however, that neither party challenged

the trial court's application of the statute to their dispute, and that the statute essentially adopted Konzelman's definition of cohabitation. The appellate court agreed with defendant that N.J.S.A. 2A:34-23(n) does not mandate proof as to all of the statutory cohabitation factors in a prima facie showing. The Appellate Division found, however, that defendant "provided no evidence to counter plaintiff's assertion there was no financial entanglement between [plaintiff and McDermott] and that McDermott maintained his own residence." Nor, in the court's view, did defendant provide evidence that "McDermott made any enforceable promise of support to plaintiff." The appellate court recognized no justification for any invasion of plaintiff's privacy and held that defendant was not entitled to discovery. It affirmed the trial court's judgment.

C.

We granted defendant's petition for certification, limited to the first two questions raised: (1) whether "evidence of intertwined finances and joint responsibility for living expenses" is required for a movant seeking to terminate alimony to establish a prima facie cohabitation showing, even when the alleged relationship is long-term and exclusive; and (2) whether a payee spouse suspected of cohabiting with another in a long-term relationship -- who entered a post-marital agreement providing that alimony terminates upon cohabitation by the payee spouse -- has "privacy rights sufficient to avoid

10

discovery where that payee makes the relationship widely known to the public." See 252 N.J. 465 (2023).[1]

We also granted the applications of the New Jersey State Bar Association and the New Jersey Chapter of the American Academy of Matrimonial Lawyers to participate as amici curiae.

## II.

### A.

Defendant contends that the Appellate Division improperly mandated that he demonstrate a financial relationship between plaintiff and McDermott at the prima facie stage, without access to discovery that might have allowed him to make such a showing. He argues that nothing in N.J.S.A. 2A:34-23(n)'s plain language or legislative history supports the Appellate Division's view that a movant must make a prima facie showing on all of the statutory factors in order to obtain discovery.

### B.

Plaintiff counters that the trial court's denial of defendant's motion was proper and is entitled to deference on appeal. She argues that neither N.J.S.A.

---

[1] We denied certification on the third issue raised by defendant: whether N.J.S.A. 2A:34-23(n) should retroactively apply to settlement agreements executed prior to the statute's enactment in 2014 that do not specify a standard to determine cohabitation.

2A:34-23(n) nor case law precisely defines the prima facie showing of cohabitation that a payor spouse must present. Plaintiff asserts that trial courts should retain the discretion to deny cohabitation applications without discovery to avoid harassment and oppression of former spouses and civil union partners who are entitled to alimony.

## C.

Amicus curiae the New Jersey State Bar Association argues that a movant in a cohabitation case makes a prima facie showing if the evidence presented would support a factfinder's conclusion that the spouse or civil union partner and another person are in a mutually supportive, intimate personal relationship in which they have undertaken duties and privileges commonly associated with marriage or civil union. Amicus asserts that if such a showing is made, the burden of proof should shift to the spouse or civil union partner receiving alimony to disprove cohabitation.

## D.

Amicus curiae the New Jersey Chapter of the American Academy of Matrimonial Lawyers asserts that a movant need not provide proof as to all factors identified in N.J.S.A. 2A:34-23(n) in order to present a prima facie showing of cohabitation.

III.

A.

New Jersey's alimony statute, N.J.S.A. 2A:34-23, provides in part that,

> [p]ending any matrimonial action or action for dissolution of a civil union . . . , or after judgment of divorce or dissolution or maintenance, . . . the court may make such order as to the alimony or maintenance of the parties . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just.

An award of alimony permits a spouse or civil union partner "to share in the accumulated marital assets to which he or she contributed." Konzelman, 158 N.J. at 195. "Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with "a level of support and standard of living . . . ."'" Quinn, 225 N.J. at 48 (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)).

Alimony "may clearly be the subject of a voluntary and consensual agreement undertaken as part of the termination of marriage and divorce." Konzelman, 158 N.J. at 194-95. "Like other spousal agreements, those covering alimony may be modified in light of changed circumstances." Id. at 195; see also Quinn, 225 N.J. at 49. "Agreements to terminate alimony upon the cohabitation of the recipient spouse are enforceable so long as the relationship constitutes cohabitation and 'the cohabitation provision of the

[PSA] was voluntary, knowing and consensual.'" Quinn, 225 N.J. at 50 (alteration in original) (quoting Konzelman, 158 N.J. at 203).

In Lepis, we established principles governing the modification of alimony by virtue of changed circumstances. 83 N.J. at 150-59. We observed that "[t]he equitable authority of a court to modify support obligations in response to changed circumstances, regardless of their source, cannot be restricted," and that "'changed circumstances' are not limited in scope to events that were unforeseeable at the time of divorce." Id. at 149, 152; see also J.B. v. W.B., 215 N.J. 305, 327 (2013) (noting that "[c]hanged circumstances are not confined to events unknown or unanticipated at the time of the agreement," but that "care must be taken not to upset the reasonable expectations of the parties").

As we held in Lepis, "[t]he party seeking modification has the burden of showing such 'changed circumstances' as would warrant relief from the support or maintenance provisions involved," and "[a] prima facie showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status." 83 N.J. at 157. In Lepis, we identified "the dependent spouse's cohabitation with another" as one example of "changed circumstances" recognized in prior case law, but we did not address the standard for a finding of cohabitation. Id. at 151.

14

We first applied the principles of Lepis to an application to terminate alimony based on a finding of cohabitation in Gayet, 92 N.J. at 151, 154-55. In Gayet, we authorized "modification for changed circumstances resulting from cohabitation only if one cohabitant supports or subsidizes the other under circumstances sufficient to entitle the supporting spouse to relief." Id. at 153-54. We recognized that "parties might attempt to conceal a new economic dependency by adopting different living arrangements from remarriage" but were "satisfied that our courts will have little difficulty in determining the true nature of the relationship." Id. at 155.

In Konzelman, we refined the cohabitation standard, recognizing that cohabitation "can be a valid basis for discontinuing alimony, without regard to the economic consequences of that relationship." 158 N.J. at 196; cf. Gayet, 92 N.J. at 154-55. We held that "a specific consensual agreement between the parties to terminate or reduce alimony based on a predetermined change of circumstances does not require an inquiry into the financial circumstances or economic status of the dependent spouse so long as the provision itself is fair." Konzelman, 158 N.J. at 197. We reasoned that "where the parties have agreed that cohabitation will constitute a material changed circumstance, and that agreement has been judged fair and equitable, the court should defer to the arrangements undertaken by the parties." Ibid.

15

We reaffirmed in <u>Konzelman</u>, however, that "[a] mere romantic, casual or social relationship is not sufficient to justify the enforcement of a settlement agreement provision terminating alimony," which instead "must be predicated on a relationship of cohabitation that can be shown to have stability, permanency and mutual interdependence." <u>Id.</u> at 202. As we observed,

> [t]he ordinary understanding of cohabitation is based on those factors that make the relationship close and enduring and requires more than a common residence, although that is an important factor. Cohabitation involves an intimate relationship in which the couple has undertaken duties and privileges that are commonly associated with marriage. These can include, but are not limited to, living together, intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle.
>
> [<u>Ibid.</u>]

We acknowledged in <u>Konzelman</u> that an application to enforce a cohabitation provision in a PSA requires careful oversight by the trial court, noting that "[p]rivacy concerns may be addressed and mitigated by judicial supervision over agreements" so that the provision is not "an instrument for vindictive, vengeful, or oppressive actions on the part of the supporting spouse." <u>Id.</u> at 201. We cautioned that a court applying a cohabitation provision "does not abrogate its equitable jurisdiction over divorce

16

arrangements and its responsibility to assure fairness in the implementation of such arrangements." Ibid.

In Konzelman, we did not address the prima facie showing that warrants discovery and a plenary hearing; in that appeal, the trial court had conducted a plenary hearing and had determined the merits of the application. Id. at 192-93. We did not impose the burden to disprove cohabitation on the spouse or civil union partner receiving alimony; to the contrary, we made clear that in a motion to terminate or suspend alimony because of alleged cohabitation, the movant has the burden to "show cohabitation to the satisfaction of the court." Id. at 202. We found that the movant in that appeal had met that burden, and we terminated alimony. Id. at 202-03.

### B.

On September 10, 2014, the Legislature enacted a comprehensive amendment to the alimony statute. L. 2014, c. 42, § 1. As amended, the statute prescribes a standard for trial courts to apply when they determine whether the record supports a finding of cohabitation, including factors similar to those identified in Konzelman, 158 N.J. at 202. N.J.S.A. 2A:34-23(n) provides in relevant part that

> [a]limony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges

17

that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.

When assessing whether cohabitation is occurring, the court shall consider the following:

(1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;

(2) Sharing or joint responsibility for living expenses;

(3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of [N.J.S.A.] 25:1-5; and

(7) All other relevant evidence.

In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship. A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.

Before enacting the 2014 amendment to N.J.S.A. 2A:34-23, the Legislature considered and rejected bills that would have authorized trial

18

courts to "modify, suspend, or terminate" alimony "only if . . . the economic benefit inuring to the payee is sufficiently material to constitute a change of circumstances." See S. 488 (2014); A. 845 (2014). In the statute as enacted, the financial relationship between the spouse or civil union partner receiving alimony and the alleged cohabitant is not itself dispositive, but is instead addressed in three of the factors to be considered by the trial court: "[i]ntertwined finances such as joint bank accounts and other joint holdings or liabilities," N.J.S.A. 2A:34-23(n)(1); "[s]haring or joint responsibility for living expenses," id. at (n)(2); and the existence of an "enforceable promise of support" to the spouse or civil union partner receiving alimony, id. at (n)(6).

The 2014 amendment to the alimony statute provided that it

> shall take effect immediately and shall not be construed either to modify the duration of alimony ordered or agreed upon or other specifically bargained for contractual provisions that have been incorporated into
>
> a. a final judgment of divorce or dissolution;
>
> b. a final order that has concluded post-judgment litigation; or
>
> c. any enforceable written agreement between the parties.
>
> [L. 2014, c. 42, § 2.]

In Quinn, we held that the statute did not govern the motion for termination in that case because it "was enacted after the PSA was entered." 225 N.J. at 51

19

n.3; accord Spangenberg v. Kolakowski, 442 N.J. Super. 529, 538-39 (App. Div. 2015).

C.

Our decisions in Gayet, Konzelman, and Quinn did not address the prima facie showing necessary for a court to order discovery in a dispute over cohabitation. See Quinn, 225 N.J. at 48-55; Konzelman, 158 N.J. at 193-203; Gayet, 92 N.J. at 150-55. The Appellate Division, however, has recently addressed that issue in two precedential decisions.

In Landau v. Landau, the Appellate Division rejected the contention of a plaintiff former spouse seeking to terminate, suspend, or modify alimony that, after the enactment of N.J.S.A. 2A:34-23(n), it was no longer necessary to make a prima facie showing of cohabitation before being permitted to conduct discovery. 461 N.J. Super. 107, 114-19 (App. Div. 2019). The appellate court found "no indication the Legislature evinced any intention to alter the Lepis changed circumstances paradigm when it defined cohabitation and enumerated the factors a court is to consider in determining 'whether cohabitation is occurring' in the 2014 amendments to N.J.S.A. 2A:34-23." Id. at 116. It held that, in the wake of the 2014 amendments to the alimony statute, "the Lepis paradigm requiring the party seeking modification to establish '[a] prima facie showing of changed circumstances . . . before a court will order discovery of

20

an ex-spouse's financial status' continues to strike a fair and workable balance between the parties' competing interests." Id. at 118-19 (quoting Lepis, 83 N.J. at 157). The appellate court stated "that a prima facie showing of cohabitation can be difficult to establish," but commented that the burden "is hardly a new problem and it cannot justify the invasion of defendant's privacy represented by the order entered here." Id. at 118. It reversed the trial court's order compelling discovery. Id. at 119.

In Temple v. Temple, the Appellate Division acknowledged that the issue presented in Landau was whether a prima facie showing is necessary before discovery is ordered, not the contours of that prima facie showing; it noted that "[w]hat constitutes that showing has not been precisely defined since the 2014 enactment of N.J.S.A. 2A:34-23(n)." 468 N.J. Super. 364, 368-69 (App. Div. 2021). The appellate court rejected the argument that in a case governed by the 2014 amendments to the alimony statute, evidence of all six specific factors prescribed by N.J.S.A. 2A:34-23(n) "must be presented for a movant to establish a prima facie case of cohabitation." Id. at 370.[2] The Appellate Division questioned how any movant could present a prima facie

_____

[2] Noting that the PSA in Temple preceded the enactment of N.J.S.A. 2A:34-23(n) but the allegations focused on the alleged cohabitation "after the statute's enactment," and acknowledging the lack of clear evidence regarding the parties' intent, the appellate court declined to decide in Temple whether the statute governed the parties' dispute. 468 N.J. Super. at 376 n.8.

21

showing of "[i]ntertwined finances such as joint bank accounts and other joint holdings or liabilities" under N.J.S.A. 2A:34-23(n)(1), or "sharing or joint responsibility for living expenses" under N.J.S.A. 2A:34-23(n)(2), without discovery. Id. at 369-70.

Acknowledging that "family judges should be careful not to permit a fishing expedition into a supported spouse's private affairs on a weak claim," the Appellate Division found it unfair that the plaintiff had "the burden of demonstrating the factual sufficiency of his claim when most of the relevant information" was in the defendant's possession. Id. at 375-76.

The Appellate Division held in Temple that, for a prima facie showing, "[i]t is enough that the movant present evidence from which a trier of fact could conclude the supported spouse and another are in 'a mutually supportive, intimate personal relationship' in which they have 'undertaken duties and privileges that are commonly associated with marriage or civil union.'" Id. at 371 (quoting N.J.S.A. 2A:34-23(n)). Concluding that the plaintiff had met that standard, the appellate court remanded the matter for discovery and an evidentiary hearing. Id. at 377.

IV.

A.

We review the trial court's decision denying defendant's motion under a deferential standard, giving "'due recognition to the wide discretion . . . our law rightly affords to the trial judges who deal with these matters.'" Spangenberg, 442 N.J. Super. at 536 (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)); see also Innes, 117 N.J. at 504 ("The modification of alimony is best left to the sound discretion of the trial court."). We limit our review to the question "whether the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013). However, to the extent that the trial court premised its decision on an interpretation of N.J.S.A. 2A:34-23(n), we review de novo that legal determination. W.S. v. Hildreth, 252 N.J. 506, 518 (2023).

B.

We first address the question whether the cohabitation standard of Konzelman or the test prescribed in N.J.S.A. 2A:34-23(n) governs this appeal.

In this case, because the parties' PSA was executed before N.J.S.A. 2A:34-23(n) was enacted, we view the appeal to be governed by the definition of "cohabitation" and the factors identified in Konzelman, 158 N.J. at 202, not

23

by the statutory definition and factors set forth in N.J.S.A. 2A:34-23(n). See Quinn, 225 N.J. at 51 n.3 (declining to apply N.J.S.A. 2A:34-23(n) to a case in which the parties' PSA was executed before the statute was in effect); L. 2014, c. 42, § 2 (providing that the 2014 amendments to N.J.S.A. 2A:34-23 do not "modify . . . specifically bargained for contractual provisions that have been incorporated into . . . a final judgment of divorce").

We recognize, however, that the two standards are closely analogous. See Landau, 461 N.J. Super. at 117 n.8 (noting that the Legislature "essentially adopted the definition of cohabitation the Court endorsed in Konzelman"). Compare Konzelman, 158 N.J. at 202, with N.J.S.A. 2A:34-23(n). We view the procedure for a prima facie showing of cohabitation in cases governed by N.J.S.A. 2A:34-23(n) to be virtually identical to the procedure for a prima facie showing of cohabitation in cases governed by Konzelman, and we thus address the requirements for such a showing in both categories of cases.

C.

As our case law recognizes, the prima facie showing is distinct from the final proofs that are the basis for an adjudication on the merits; it is simply a threshold showing required so that the privacy of the spouse or civil union partner receiving alimony is not invaded in pursuit of a baseless cohabitation claim. See Konzelman, 158 N.J. at 201 (noting the trial court's obligation to

24

protect the party receiving alimony from abusive tactics); <u>Temple</u>, 468 N.J. Super. at 375 (cautioning trial courts not to permit intrusive discovery based on a weak claim); <u>Landau</u>, 461 N.J. Super. at 118-119 (discussing the requirement of a prima facie showing). We respectfully disagree with the Appellate Division's observation in <u>Landau</u> that "[t]here is no question but that a prima facie showing of cohabitation can be difficult to establish." 461 N.J. Super. at 117 (citing <u>Konzelman</u>, 158 N.J. at 191-92). Although a litigant may devote considerable resources to gathering information to support a motion to terminate or suspend alimony, as did the movant in <u>Konzelman</u>, the mandate that a movant present a prima facie showing in order to obtain discovery is not intended to impose a high bar.

To the contrary, prima facie evidence is defined as "evidence that, if unrebutted, would sustain a judgment in the proponent's favor." <u>Baures v. Lewis</u>, 167 N.J. 91, 118 (2001), <u>overruled on other grounds by</u> <u>Bisbing v. Bisbing</u>, 230 N.J. 309, 328-36 (2017). In a prima facie showing, the movant is "entitled to an assumption of the truth of his allegations and the benefit of all reasonable inferences to be drawn from the evidence he had marshaled." <u>Temple</u>, 468 N.J. Super. at 368. The movant's burden at the preliminary stage is not an onerous one.

25

Consistent with that standard, the movant's certifications, if supported by competent evidence, "should not be read restrictively or literally to determine whether alone they spell out a claim for relief, nor should their probative worth be neutralized or discounted by the opposing certifications." Conforti v. Guliadis, 128 N.J. 318, 328 (1992); see also Temple, 468 N.J. Super. at 375 (noting that "[t]here may be non-cohabitation explanations" for evidence presented by the movant in his prima facie showing, "but the only question for the judge . . . was whether [the movant] presented enough to entitle him to discovery and an evidentiary hearing").[3]  In other words, the trial court should not find that the movant has failed to present a prima facie showing simply because the parties' certifications dispute relevant facts.

We next address the question whether the movant must proffer evidence on all of the applicable cohabitation factors, or just some of the factors, in order to present a prima facie showing.

In cases that are governed by Konzelman rather than N.J.S.A. 2A:34-23(n), the relevant factors "include, but are not limited to, living together,

---

[3]  Although the evidence presented to the trial court in Temple constitutes an example of a sufficient prima facie showing, 468 N.J. Super. at 371-75, Temple does not establish the minimum quantum of evidence required for such a showing.  The trial court's inquiry is case-specific, and the evidence that is sufficient to establish a prima facie showing will vary depending on the circumstances of a given case.

26

intertwined finances such as joint bank accounts, sharing living expenses and household chores, and recognition of the relationship in the couple's social and family circle." 158 N.J. at 202. In cases to which N.J.S.A. 2A:34-23(n) applies, the court must "consider" the statute's seven enumerated factors, including "[a]ll other relevant evidence." N.J.S.A. 2A:34-23(n)(7).

Nothing in Konzelman or N.J.S.A. 2A:34-23(n) suggests that the movant must present evidence relevant to all of the factors in order to set forth a prima facie case. Indeed, any such requirement would impose an unfair burden on a movant at the preliminary stage. Absent discovery, a movant is unlikely to have access to the financial records and other documents relevant to Konzelman's financial factors -- "intertwined finances such as joint bank accounts" and "sharing living expenses" -- or their statutory counterparts, N.J.S.A. 2A:34-23(n)(1) and (n)(2).

As the Appellate Division noted in Temple, "[p]eople tend to treat financial information as confidential and do not normally volunteer it to others, let alone former spouses obligated to pay them alimony." 468 N.J. Super. at 370. When the court determines whether there is a prima facie showing, "most information relevant to cohabitation is not readily available to movants," and the motion at that stage is thus "akin to summary judgment motions filed prior to the completion of discovery." Id. at 375. We agree with

27

defendant that at the prima facie stage, any requirement that a movant present financial evidence showing cohabitation would impose too onerous a burden.

Accordingly, we decline to require a movant seeking to present a prima facie showing to proffer evidence on all of the cohabitation factors in Konzelman, or on all of the cohabitation factors set forth in N.J.S.A. 2A:34-23(n) in cases governed by the statute. Instead, if the movant presents a certification supported by competent evidence as to at least some of the relevant factors, and if that evidence, if unrebutted, would sustain the movant's burden of proof as to cohabitation, the trial court should find that the movant has made a prima facie showing even if the spouse or civil union partner receiving alimony presents a certification contesting facts asserted by the movant. See Conforti, 128 N.J. at 328; Temple, 468 N.J. Super. at 375. The movant need not address all of the factors identified in the governing standard.

Finally, we briefly address the procedure to be followed by the trial court if it finds that the movant has presented a prima facie showing of cohabitation.

If the trial court makes such a finding, it should order limited discovery as to discrete issues that it determines to be relevant to one or more of the cohabitation factors that govern the case. In fashioning its discovery order, the trial court should take appropriate steps to safeguard the privacy of the spouse

28

or civil union partner receiving alimony and the individual with whom that person is alleged to be cohabiting. Those steps may include, but are not limited to, constraints on the discovery to be provided to the movant and protective orders limiting access to the information subject to discovery. See Konzelman, 158 N.J. at 201 (noting the importance of judicial supervision to address privacy concerns); see also Administrative Directive #02-22, "Family - - Revised Standard Protective Order" (Apr. 5, 2022). See generally R. 4:10-3 (addressing protective orders in civil practice).

Our current Family Part court rules do not address post-judgment discovery in connection with a motion to terminate or suspend alimony based on cohabitation. We therefore request that the Family Practice Committee propose amendments to the court rules governing such discovery and uniform interrogatories to streamline the discovery process in such cases.

Following the completion of limited discovery, the parties should file supplemental certifications in support of and in opposition to the motion. If material facts remain in dispute following discovery and the submission of supplemental certifications, the trial court must conduct a plenary hearing to determine the motion to terminate or suspend alimony. We reiterate our

holding in <u>Konzelman</u>, 158 N.J. at 202, that the movant bears the burden of proving cohabitation at all stages of the proceeding.[4]

D.

Here, defendant asserted that plaintiff and McDermott were in a mutually supportive relationship of at least eight years' duration in which they undertook duties commonly associated with marriage. See <u>Konzelman</u>, 158 N.J. at 202. Although defendant did not proffer evidence that plaintiff and McDermott had "intertwined finances such as joint bank accounts" or that they were "sharing living expenses," <u>ibid.</u>, he did present evidence regarding other factors identified in <u>Konzelman</u>.

First, defendant presented evidence relevant to whether plaintiff and McDermott were "living together." See <u>ibid.</u> Defendant submitted to the trial court the report of his private investigator demonstrating that plaintiff and

---

[4] We decline to adopt the argument of defendant and amicus curiae the New Jersey State Bar Association that a prima facie showing by the movant should shift the burden of proof to the spouse or civil union partner receiving alimony to disprove cohabitation. In the pre-<u>Konzelman</u> Appellate Division and trial court decisions cited by defendant and amicus in which the courts shifted the burden to the opposing party, the burden was shifted because the movant lacked access to evidence relevant to cohabitation. See <u>Ozolins v. Ozolins</u>, 308 N.J. Super. 243, 248-49 (App. Div. 1998) (holding that it would be unreasonable to impose the burden of proof on a party lacking access to the evidence necessary to support that burden of proof); <u>Frantz v. Frantz</u>, 256 N.J. Super. 90, 92-93 (Ch. Div. 1992) (same). A trial court's order granting limited discovery in cohabitation cases following a prima facie showing resolves the concerns expressed in those decisions.

McDermott were together on each of the forty-four days over which the investigator conducted surveillance; that they were together overnight on more than half of those days; and that plaintiff had access to McDermott's home whether or not he was present. Defendant also submitted photographs from social media depicting plaintiff and McDermott on vacation together.

Second, defendant presented evidence that plaintiff and McDermott shared household chores. See ibid. The private investigator's report included the investigator's observations and photographs of plaintiff and McDermott transporting groceries, bags of personal belongings, and laundry at one another's residences.

Third, defendant presented evidence relevant to "recognition of the relationship in the couple's social and family circle." See ibid. He submitted to the trial court photographs from social media accounts maintained by plaintiff and McDermott depicting them at social events together and with the parties' children.

We do not address whether the evidence presented by defendant -- in its current form or as potentially buttressed by financial information following discovery -- establishes cohabitation under the Konzelman standard. That question will be addressed by the trial court on a full record. Assuming, for purposes of the prima facie inquiry, that defendant's contentions are correct,

31

we view the evidence he presented to constitute a prima facie showing of cohabitation.

Accordingly, we find that the trial court did not properly exercise its discretion when it denied defendant's motion without discovery, and we reverse the Appellate Division's judgment affirming the trial court's determination. On remand, the trial court must order plaintiff to provide limited discovery, and conduct a plenary hearing in the event that it finds disputes of material fact after discovery and the submission of supplemental certifications.

V.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER and JUSTICES SOLOMON, PIERRE-LOUIS, WAINER APTER, and FASCIALE join in JUSTICE PATTERSON's opinion. JUDGE SABATINO (temporarily assigned) did not participate.